**UNITED STATES of America,**
**Appellee,**

v.

**Saul I. BIRNBAUM, Appellant.**

**No. 230, Docket 33815.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 30, 1969.

Decided Feb. 3, 1970.

Certiorari Denied April 20, 1970.
See 90 S.Ct. 1363.

Alan M. Dershowitz, Cambridge, Mass. (Carro, Spanbock & Londin, New York City, Jerome J. Londin and Allen Green, New York City, on the brief), for appellant.

Peter Fleming, Jr., Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, on the brief), for appellee.

Before FRIENDLY, SMITH and FEINBERG, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Saul I. Birnbaum was twice tried and convicted in the United States District Court for the Southern District of New York on a 1961 indictment for bribing and conspiracy to bribe an Internal Revenue agent. On the first conviction, he was sentenced, in 1963, to concurrent eighteen-month terms, but, after reversal, 337 F.2d 490 (2d Cir. 1964), he was re-tried, convicted and sentenced in 1966 to concurrent one-year terms. This conviction was upheld. 373 F.2d 250 (2d Cir.), rehearing denied, 375 F.2d 232, cert. denied, 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967). Birnbaum's motion to reduce sentence was denied in 1967, reargument granted and denial adhered to in 1968, aff'd on appeal, 402 F.2d 24 (2d Cir.), and cert. denied, 394 U.S. 922, 89 S.Ct. 1181, 22 L.Ed.2d 455 (1969). Birnbaum's motions to vacate the conviction and/or grant a new trial (pursuant to 28 U.S.C. §§ 1651 and 2255 and Rule 33 of the Federal Rules of Criminal Procedure) and for evidentiary hearing and/or modification of judgment to grant probation (pursuant to 28 U.S.C. §§ 1651 and 2255 and Rule 35 of the Federal Rules of Criminal Procedure) were denied by the court without a hearing, Thomas F. Murphy, Judge, and Birnbaum appeals. We find no error and affirm the denial of the motions.

Appellant's principal claims on this appeal are twofold: that the government suppressed evidence at the second trial (the one with which we are concerned) that a chief government witness, one Eveleigh, had been promised government assistance to remain permanently in the United States, although he was under order of deportation, and that the sentence was illegal because tentative rather than final or in the alternative because a claimed provision for probation was not carried out.

I. Suppression of Evidence

■ The motions to vacate conviction and for new trial are based on a evidence that Eveleigh had lied in his claim that the government suppressed testimony concerning promises of favorable government action on his efforts to avoid deportation. In substance, the claim is that Eveleigh was promised a permanent stay of deportation and that this is sufficiently established, at least to call for a hearing, by three items "recently discovered"—an affidavit by Attorney Richard H. Wels dated April 2, 1969, a set of three letters to Eveleigh from the Immigration and Naturalization Service in 1961 and land records showing the purchase of a house on Long Island by Eveleigh's wife in November, 1965.

The Wels affidavit concerned a conversation in 1961 or 1962 with one Shaffer of the Department of Justice of which Wels stated:

"* * * It is my recollection that I told Mr. Shaffer of Mr. Eveleigh's apprehension that he would be deported, reminding Mr. Shaffer of Mr. Eveleigh's cooperation with the Government and requested Mr. Shaffer to talk with Mr. Sheridan [a higher official in the Department of Justice] and have the Department use its good offices with the Immigration and Naturalization Service in Mr. Eveleigh's behalf. A few days later, Mr. Shaffer called and confirmed to me that my request had been approved and the requested action had been or would be taken. I have no personal knowledge of the extent of Mr. Eveleigh's cooperation with the Government, if any, after I told him of my conversations with Mr. Shaffer."

Birnbaum contends that this language must be interpreted as a promise that deportation would be permanently stayed, since where, as here, an evidentiary

hearing has been denied the court must assume "the worst conduct by the prosecution consistent with such facts as are now known." Kyle v. United States, 297 F.2d 507, 514 (2d Cir. 1961). That case, however, presented a far different situation—a request for papers directly bearing on the defendant's intent allegedly in the government's files, denial by the government that it possessed them, examination of the files disclosing their absence, and their subsequent unexplained appearance.

We see no sufficient basis to require a hearing at which Wels could be examined as to the meaning of his affidavit regarding Shaffer's representations to him. The telephone conversations were seven or eight years prior to the affidavit, and Wels did not purport to give the exact wording of the conversations; his affidavit was not necessarily inconsistent with the information before the trial jury since "good offices" were used to delay deportation and the jury was informed of the delay. Wels later furnished the government with an affidavit disclaiming any request to keep Eveleigh here permanently, any promise to do so or any communication to Eveleigh of such a promise. Florea and Dershowitz, attorneys employed by Birnbaum, submitted affidavits disputing Wels' version of conversations with them on the subject. All communications from Wels reprinted in the appendix have consistently denied that he asked for or received a promise of a permanent stay. In view of this, the possible ambiguity in one document, and Birnbaum's attorneys' versions of statements made to them in a manner most helpful to their cause are not enough. Although the government made no showing as to Shaffer's or Sheridan's recollection of the incident, we will not require further proceedings on so equivocal and flimsy a foundation.

Neither do the purchase of the house on Long Island in 1965 by Mrs. Eveleigh or the three letters to Eveleigh from the Immigration and Naturalization Service in 1961 support Birnbaum's claim that the trial court erred by not granting an evidentiary hearing. The purchase of a home, in view of today's rental market and steadily rising real estate market, might well be thought as consistent with the expectation that the litigation for which Eveleigh was needed would take some time to complete (it is now four years later) or with the hope expressed by Eveleigh to the jury that the deportation order would never be carried out, as with an existing promise of permanent relief. The purchase was recorded in the land records at the time, prior to the second trial, and such records were equally available to the defendant and the government. The three letters merely indicate that there was a deportation order issued and sent to Eveleigh notifying him that he was to appear on November 14, 1961 for deportation and that such order was stayed by another letter, dated November 5, 1961. The letters show only that there was an order in 1961 to report for deportation and that the order was subsequently rescinded. But the jury knew this. Eveleigh testified to the order and the jury observed that he was still here five years later. As this court stated in United States v. Keogh, 391 F.2d 138 (2d Cir. 1968):

> " * * * To invalidate convictions in such cases because a combing of the prosecutor's files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict would create unbearable burdens and uncertainties. * * * " Id. at 148.

The chance that the jury would have given added weight to the claimed motive for Eveleigh to lie would seem ephemeral. The reduction in his criminal sentence, his record of corporate theft, false statements and fraud, the five year delay in deportation and his hope that he could remain here permanently were all before the jury and emphasized in counsel's attack on Eveleigh's credibility in argument to the

jury.[1] Under these circumstances, it was not error for the trial court not to hold an evidentiary hearing on this claimed issue of suppression of evidence.

## II. Sentencing Procedure

 We turn now to appellant's other principal claim, namely that his sentence of one year is illegal because it was tentative rather than final or in the alternative because a claimed provision for probation was not carried out by the sentencing court. When Birnbaum's motion to reduce sentence was before this court (402 F.2d 24), the contention was also made that Judge Cooper had conditionally promised the defendant probationary status if he realigned his sights. However, we rejected that argument and stated:

" * * * A careful reading of Judge Cooper's statement, however, reveals no conditional promise that appellant's imprisonment sentence would be suspended but only a suggestion that probation remained a feasible possibility. * * * that [Birnbaum] may have

been misled by his own wishful thinking or by the overly optimistic advice of counsel provides no basis for the relief he seeks. * * * " *Id.* at 29.

We further stated that even the conversations with Justice Heller of the New York Supreme Court (who had been acting as an unofficial probation officer to Birnbaum) did not have the legal effect of putting the defendant on probation; and there was no conditional promise that the defendant's imprisonment sentence would be suspended. The actual sentencing of Birnbaum was direct and final; Judge Cooper committed the defendant to the custody of the Attorney General or his representative for imprisonment for a period of one year. Words and phrases are subject to different interpretations, and the elimination of every conceivable doubt is not essential to the validity of a sentence. Byrd v. United States, 345 F.2d 481 (10 Cir. 1965). To whatever extent the issue was left undecided by our previous decision, we find the imprisonment imposed upon the defendant to have been final.

---

1. "Eveleigh's is one of the most interesting stories of motivation, and what was in it for him. Mr. Eveleigh was convicted with Mr. Guterma. He was sentenced to two years and 11 months. He told you, gentlemen, that after he was sentenced he made an application to Judge MacMahon to reduce his sentence. The application was denied. Then he started to tell his stories, and after he had started to say whatever he thought would help him, he made another application to Judge MacMahon to reduce his sentence and this time his sentence was reduced by a year.

What do you think Eveleigh would do to get out of jail a year earlier? What would a man like Eveleigh, a corporate thief, a maker of false statements, a defrauder, what would a man like that do to get out of jail? What would he say to get out of jail a year early?

But that is not all, because there was a deportation order outstanding and there still is. It has been outstanding, it has been standing out so long it must be tired at this point.

Mr. Eveleigh doesn't want to leave the United States. I suggest to you, gentle-

men, that what is in it for Eveleigh to testify here is that that deportation order has been held up for five years, for five years.

And that is a pretty good inducement. That is a pretty good inducement. Do you think he is ever going to leave? I don't know, but I know what he thinks.

'Q. Do you have hopes that the deportation order will not be carried out?

A. I always have hopes, yes, sir.'

When I pressed him on that he said, 'I shall to the last moment try to find relief if it is legally possible.'

So that the possibility that Mr. Eveleigh may remain here permanently exists in a very real way.

I suggest under these circumstances, you will understand why two of these people who are indicted perjurers, who admitted lying under oath and the third one, Eveleigh, who did lie under oath but did not admit it, you will understand why it is that they would not hesitate to say anything in this world that would help them."

■ Birnbaum also argues that his sentence was illegal because a claimed provision for probation was not carried out by Judge Cooper; this is based upon affidavits by Florea and Birnbaum as to what Justice Heller and Maxwell Rabb, Esq., a well-known New York lawyer, said Judge Cooper told them regarding Birnbaum's sentence. Judge Cooper is alleged, in these affidavits, to have thought Birnbaum should have contributed $500,000 to charity while his appeal was pending (he contributed less) and to have been quite upset and antagonized by the attacks upon his conduct of the trial by appellate counsel to Birnbaum, which led to a strong dissent by Chief Judge Lumbard to the affirmance of the conviction on the second trial. 373 F.2d 250, 265–269. Birnbaum asserts that there was an abuse of discretion by Judge Cooper after "dangling" the possibility of probation before him if he realigned his sights which the judge's statement induced him to do. However, probation is a matter of grace, not a matter of right or contract, and it should be granted only when both the individual's and the public's interests will be best served by suspension of the sentence. United States v. Birnbaum, at 402 F.2d 24, 30. As we noted there, Judge Cooper gave long and careful consideration to the imprisonment sentence and the motion to reduce and suspend that sentence; after considering the affirmative aspects of Birnbaum's character prior to imposing sentence, there was not the "impressively convincing showing" that the judge felt was necessary to grant probation. Even if it is true as alleged that Judge Cooper felt Birnbaum had not done enough to deserve probation, such a feeling does not establish an abuse of discretion so as to call for disturbing the determination on appeal.

■ Birnbaum's allegation that Judge Cooper refused to reduce the sentence because of the appeal and the language used therein is based principally upon his own affidavit as to what Justice Heller told him that Judge Cooper told Justice Heller. The conversation between the two judges purportedly was on April 3, 1969, about three years after the appeal was briefed and argued. This affidavit and the one by Florea, a counsel to Birnbaum, as to what Rabb said Judge Cooper told him are no sufficient basis for a hearing. Cf. United States v. Keogh, 271 F.Supp. 1002, 1008 fn. 22 (S.D.N.Y.1967), modified 391 F. 2d 138 (2d Cir. 1968); Dirring v. United States, 370 F.2d 862 (1 Cir. 1967); D'Ercole v. United States, 361 F.2d 211 (2d Cir. 1966). Even if the affidavits are taken at face value, they do not establish that Judge Cooper's refusal to impose probation was due to vindictiveness or improper; annoyance with a lawyer is not identical with or an admission of bias or vindictiveness. With only the affidavits before him, Judge Murphy did not abuse his discretion in not holding a hearing concerning the reasons behind Judge Cooper's refusal to grant probation.

■ Birnbaum's contention that his constitutional rights were abridged by his absence and the absence of his counsel when Judge Cooper made his determination that the defendant was not to be granted probation is not well taken. This was not imposition of sentence following 18 U.S.C. § 4208(b) procedures; the original sentence was final, with a possibility of a later reduction. A defendant's presence is not required when his sentence may be reduced under Rule 35 Federal Rules of Criminal Procedure, United States v. Behrens, 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963), since the sentence has already become final.

Affirmed.