## STATE OF CONNECTICUT v. KENDALL SMITH
### (13116)

HEALEY, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued December 9, 1987—decision released April 19, 1988

*Wesley S. Spears,* with whom, on the brief, was *Timothy H. Everett,* for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, with whom, on the brief, was *Frank D'Addabbo,* assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The defendant, Kendall Smith, a probationer, has appealed from the imposition by the trial court, *Barall, J.,* of a special condition of probation one year after his sentencing originally placing him on probation. He maintains that, in doing so, the trial court violated General Statutes § 53a-30[1] and his probationer's right to be free from illegal searches and seizures. We dismiss his appeal as moot.

---

[1] General Statutes § 53a-30 provides: "CONDITIONS OF PROBATION AND CONDITIONAL DISCHARGE. (a) When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant: (1) Work faithfully at a suitable employment or faithfully pursue a course of study or of vocational training that will equip him for suitable employment; (2) undergo medical or psychiatric treatment and remain in a specified institution, when required for that purpose; (3) support his dependents and meet other family obligations; (4) make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance; (5) if a minor, (A) reside with his parents or in a suitable foster home, (B) attend school, and (C) contribute to his own support in any home or foster home; (6) post a bond or other security for the performance of any or all conditions imposed; (7) refrain from violating any criminal law of the United States, this state or any other state; (8) reside in a residential community center or halfway house approved by the commissioner of correction, and contribute to the cost incident to such residence; (9) satisfy any other conditions reasonably related to his rehabilitation. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any.

"(b) When a defendant has been sentenced to a period of probation, the officer of adult probation may require that the defendant comply with any

On October 30, 1985, Smith pleaded guilty under the *Alford* doctrine to one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2).[2] *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). At that time, the court, *Purtill, J.,* sentenced the defendant to five years in prison with execution to be suspended after eighteen months with three years probation. The presentence investigation report at that time indicated that the defendant had a problem with drugs and that he had committed the robbery to obtain money for drugs. No special conditions of probation were imposed at the time of this sentencing.

After the defendant's probationary period began, senior probation officer Thomas McGeary, who had ten years experience, was assigned to act as his probation officer. On October 28, 1986, McGeary, based on his observations of the defendant and the original presentence investigation, filed a request[3] to modify the con-

or all conditions which the court could have imposed under subsection (a) which are not inconsistent with any condition actually imposed by the court.

"(c) At any time during the period of probation or conditional release, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any."

[2] General Statutes § 53a-134 (a) (2) provides in part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[3] McGeary's "Request" set out the following: "The undersigned requests that:

"MODIFICATION for the Reason for Request set forth below, the above order of probation/conditional discharge be modified as follows: Special Condition of Probation that Kendall Smith submit to urinalysis and cooperate with any and all drug treatment required by Adult Probation.

"REASON FOR REQUEST Subject has admitted to heavy Cocaine and marijuana use in the past, and claimed he committed the Offense to obtain

ditions of probation by imposing a special condition of urinalysis testing and cooperation with any drug treatment required by the adult probation department. On January 8, 1987, a hearing on McGeary's request was held by the court, *Barall, J.* The defendant was present with counsel. Both McGeary and the defendant testified and both were cross-examined. McGeary's testimony developed that the defendant, on October 23, 1986, had reported four hours late for an appointment at McGeary's office. At that time, McGeary, who had participated in a number of training courses concerning the use of drugs, said that the defendant had been "a little bit fidgety," "a little bit edgy" and that "he just appeared to [McGeary] at that time to be under the influence of some type of stimulant." McGeary asked him to provide a urine sample at that time. The defendant declined, saying that he would not because of a medical condition and he showed McGeary some prescription medication that he said he had been taking. McGeary also said that some weeks later the defendant had told him that he had been using marihuana and that he would continue to do so.

During his testimony, the defendant denied that he had ever admitted to McGeary that he had used marihuana and he maintained that McGeary had told him that it was all right if he used marihuana but that he would not allow him to use "cocaine and all that other stuff, heroin." The defendant did state that he later had submitted to a urine test for McGeary but that he had done so against his will. The test disclosed the presence of marihuana.

At the conclusion of the hearing, the trial court, *Barall, J.,* made it clear that the defendant's drug use

money for cocaine and marijuana. It is felt that Adult Probation should monitor for narcotics usage.

"Dated at Hartford On 10/28/86 Signed /s/ A.T. McGeary Sr. P.O."

was "an issue of credibility" and that it believed the probation officer. It found "good cause"[4] for granting the modification and ordered that the defendant "submit himself to body fluid examination from time to time as deemed appropriate by the probation department to ensure that he stays off marijuana or any other drugs . . . [and] that if the probation department orders drug counseling, both either in or out patient is deemed appropriate, [that] shall be added as a second condition." Defense counsel noted his exception and then stated: "Just for the record, we do intend to appeal Your Honor." On January 26, 1987, the defendant appealed to the Appellate Court and, thereafter, the appeal was transferred to this court pursuant to Practice Book § 4023.

On May 5, 1987, the defendant, with his counsel present, appeared before the trial court, *Byrne, J.* At that time, he was put to plea on an information charging him with the violation of the conditions of his probation in violation of General Statutes § 53a-32.[5] He

[4] In finding "good cause," the trial court said, assuming that there had been an application for a search warrant, "which would be based upon the issue or probable cause . . . and an affidavit submitted, I would have issued a search warrant. [Because] you have the testimony of a credible probation officer, acknowledgment of a known felon . . . acknowledging that he is using a substance that is forbidden under our law and so I am going to grant the request for modification."

[5] General Statutes § 53a-32 provides: "VIOLATION OF PROBATION OR CONDITIONAL DISCHARGE: ARREST; PROCEDURE. (a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. Such

admitted the violation.[6] Before the trial court addressed the defendant and his counsel on the plea canvass, the state read the factual basis of the charge. In part, he recited the modification of the conditions of probation by Judge Barall and also said: "[A]fter the January 8th, 1987 modification, it was found that the defendant had involved himself with narcotics and did come back with dirty specimens." The canvass included this question to the defendant: "Now is anybody forcing you to make this admission" and he answered, "No." Defense counsel was asked if he was satisfied that the defendant's "admission [was] voluntarily and understandably made,"

written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. After making such an arrest, such probation officer shall present to the detaining authorities a similar statement of the circumstances of violation. Provisions regarding release on bail of persons charged with a crime shall be applicable to any defendant arrested under the provisions of this section. Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may continue or revoke the sentence of probation or conditional release or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

[6] When the defendant pleaded to the information, the following took place:

"The Clerk: State of Connecticut versus Kendall Smith, docket number 5 14 14. In an original information you're charged with violating the conditions of your probation imposed on December 20th, 1985, by the Honorable Joseph Purtill at the town of Hartford on or about March 3rd, 1987, in violation of Connecticut General Statute [§] 53a-32, do you admit or deny this violation?

"Mr. Smith: Admit."

to which counsel answered, "Yes." Defense counsel was also asked whether he knew "of any reason why [the court] shouldn't accept the admission" and counsel answered, "No, I don't Your Honor." The state also indicated that it did not. The record indicates that the case had been pretried before the court, *Byrne, J.,* and that there had been some plea bargaining wherein the defendant sought the reduction of the unexpired portion of his sentence. On June 4, 1987,[7] the court, *Byrne, J.,* modified the original sentence and sentenced the defendant to serve nine months incarceration, which, it said, would "in effect serve the unexpired portion of the sentence."[8]

On appeal, the defendant claims that the trial court erred in imposing compulsory drug tests as a special condition of his probation one year after imposition of his sentence. He contends that the trial court, in doing so, violated General Statutes § 53a-30, his federal and state[9] constitutional rights to be free from illegal searches and seizures and his right to have notice of the terms of his probation at the time of sentencing. He argues that a supervisory court other than the sentencing court lacks authority to impose postsentence special conditions of probation and that, in any event,

---

[7] At that time, the prosecutor indicated to the court that the defendant "now has a drug case pending."

[8] At oral argument, we were informed that the defendant has served the sentence and is no longer incarcerated.

[9] We do not discuss the defendant's Connecticut constitutional claims. Initially, we note that his preliminary statement of issues refers only to the United States constitution. In addition, while his brief refers to the Connecticut constitution, it undertakes no separate analysis indicating that the rights afforded him under the federal and state constitutions are distinguishable with reference to the substantive issue that he has raised. Moreover, we do not perceive, on the facts of this case, any reason independently to undertake any such analysis. See *State* v. *Chung,* 202 Conn. 39, 45 n.7, 519 A.2d 1175 (1987); *State* v. *Toste,* 198 Conn. 573, 576 n.3, 504 A.2d 1036 (1986).

§ 53a-30 (c) should be construed to allow only modification or enlargement of existing conditions that "already apply to a probationer."

The defendant resists not only the state's argument of mootness, but also the state's collateral claim that he has not preserved any of his claims for appeal. He acknowledges that it is correct that he has completed his sentence and that the special conditions complained of on this appeal no longer exist. He goes on, however, to reason that, because the factual basis upon which he pleaded to the violation resulted from that which was disclosed by drug testing imposed in violation of his rights, the "admitted" revocation of probation, if permitted to stand, would not only have a negative effect on his ability to obtain probation in the future but also that it should be erased from his record. This appeal, therefore, he claims is not moot. He argues that he has preserved his claims for appeal because he objected and excepted to the special conditions at the time they were imposed by the trial court, *Barall, J.* In addition, the defendant contends that he has waived no right to his appeal by his later plea-bargained admission to the violation for which he was sentenced. He maintains that this is so not only because he had objected and excepted to the imposition of the special condition but also because the trial court, *Byrne, J.,* in fact knew of the pendency of the appeal that he had taken earlier. The record in the trial court, however, shows nothing to indicate that the trial court knew of the pendency of this appeal.[10]

On the other hand, the state contends that all of the defendant's claims of error are without merit. Although

[10] Defense counsel on appeal, who was trial counsel, indicates that the pendency of this appeal was discussed in chambers. The record does not so disclose.

Concerning matters that may occur in chambers and which are not made of record, only recently we have said: "A case must be decided on the formal record and a court cannot resort to matters extraneous to the record

developed at length in its brief, the state's broad claim is that, even if it is assumed that the special condition of urinalysis violated the defendant's fourth amendment rights, the defendant's express admission of the illegal use of drugs upon his plea canvass validated the probation revocation because compliance with the law is always a condition of probation. The state, however, is quick to add that there was no constitutional or statutory violation and that the special condition was properly imposed. It did state in oral argument that, in the event we conclude that the imposition of the special condition had been invalid, then the revocation of probation would have to be removed from the defendant's record. This possible "collateral consequence" is, the state asserts, the only possible obstacle to a dismissal on grounds of mootness. In the event that there may be collateral consequences if we resolve the defendant's claims in his favor, it clearly impacts on the matter of mootness.

Reference to the consequences of a guilty plea is helpful when we consider the direct or collateral consequences of a revocation of probation in this case. "The distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *United States* v. *Lambros,* 544 F.2d 962, 966 (8th Cir. 1976), cert. denied, 430 U.S. 930, 97 S. Ct. 1550, 51 L. Ed. 2d 774 (1977); *Huffman* v. *State,* 703 S.W.2d 566, 568 (Mo. App. 1986). Something that is "collateral" is "indirect."

in making its determination." *State* v. *Gilnite,* 202 Conn. 369, 378, 521 A.2d 547 (1987); *Hasbrouck* v. *Hasbrouck,* 195 Conn. 558, 560, 489 A.2d 1022 (1985).

In this context, we note that defense counsel put nothing on the record indicating that any such matter was discussed in chambers, but likewise put nothing on the record, at that time, that the defendant was admitting the violation "subject" to an appeal previously taken.

N. Webster, Third New International Dictionary. A "consequence" has been defined as "a natural or necessary result, Webster's Third New International Dictionary (1964) p. 482." *People* v. *White,* 8 Mich. App. 220, 224, 154 N.W.2d 1 (1967). Thus, the possibility of enhanced punishment upon a subsequent drug charge has been said to be a "collateral consequence" of a guilty plea; *United States* v. *Lambros,* supra; *Huffman* v. *State,* supra; and we note that the record in this case refers to a drug charge subsequent to the imposition of the special conditions complained of by the defendant. If the revocation of the defendant's probation stands, it may not only have an effect on his ability to obtain probation in the future but also affect his standing in the community in its connotation of wrongdoing, job opportunities and is a blemish on his record. See *United States ex rel. Bey* v. *Connecticut State Board of Parole,* 443 F.2d 1079, 1086–87 (2d Cir. 1971); *Hahn* v. *Burke,* 430 F.2d 100, 102 (7th Cir. 1970); *State* v. *Johnson,* 11 Conn. App. 251, 256, 527 A.2d 250 (1987). It has been said that "judicial notice can be taken of the 'collateral disability' which accompanies the acquisition by an adult of a criminal record, and that such harm is of sufficient magnitude to overcome a charge of mootness." *State* v. *Wilson,* 41 Ohio St. 2d 236, 238, 325 N.E.2d 236 (1975) (Herbert, J., concurring).

The "collateral consequences" threshold insofar as mootness is concerned is therefore colorably present and requires that we review his other claims to determine whether the revocation of probation was valid in order to ascertain if there is actually a possible collateral consequence. In the event that we decide that the revocation of probation was invalid, then there are cognizable collateral consequences and the appeal is not moot. If, however, we decide that the revocation of probation was valid, the appeal is moot. The circumstance, of course, that the defendant has completed his sen-

tence and that the special condition complained of is no longer extant does not bar such an inquiry by us. See *Jones* v. *Helms,* 452 U.S. 412, 415 n.6, 101 S. Ct. 2434, 69 L. Ed. 2d 118 (1981); *Sibron* v. *New York,* 392 U.S. 40, 51, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968); *Carafas* v. *LaVallee,* 391 U.S. 234, 237–38, 88 S. Ct. 1556, 20 L. Ed. 2d 554 (1968); *Herbert* v. *Manson,* 199 Conn. 143, 144 n.1, 506 A.2d 98 (1986).

At this point, it is well to discuss the matter as to whether the defendant's admission and plea to the violation of probation and his acceptance of the plea bargain precludes his appeal. See generally *Cherokee Nation* v. *United States,* 355 F.2d 945, 949 (Ct. Cl. 1966); *Connecticut Light & Power Co.* v. *Public Utilities Control Authority,* 176 Conn. 191, 201, 405 A.2d 638 (1978); 4 Am. Jur. 2d, Appeal and Error § 251; 4 C.J.S., Appeal and Error § 215b. This plea bargain resulted in his obtaining the benefit of a nine month sentence for the unexpired portion of his sentence. This raises the question whether one may have the benefit of that bargain in such circumstances and still maintain the appeal, irrespective of any issue of mootness. We have already set out the defendant's claim in that regard but must now determine whether he has effectively surrendered his right to appeal by accepting the benefit of his plea bargain. We decide that he has not under the unique circumstances of this case.

We may ourselves determine to exercise our inherent supervisory authority over the administration of justice to review the defendant's claim. See *State* v. *Chung,* 202 Conn. 39, 44, 519 A.2d 1175 (1987); *State* v. *Madera,* 198 Conn. 92, 99–100, 503 A.2d 136 (1985); *State* v. *Cohane,* 193 Conn. 474, 499, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984). To do so in this case would comport with the interests of justice. The state argues that the appeal has been rendered moot by the revocation of the

defendant's probation which was based on his "unconditionally" admitting the charged violation. Yet, never in the trial court did the state or the defendant put on the record at the time of that admission that there was an appeal pending from the special condition, the implementation of which disclosed the evidence that brought about the admission. Had this been done, as we believe it should have been, the continuing viability of the pending appeal and its place, if any, in the plea bargaining process could have been addressed. Moreover, the defendant has since completed serving the sentence, which was the subject of the plea bargain. His position throughout has been that the special condition had been illegally imposed and that any criminal consequences that flowed from it had continued to violate his rights. Implicit in this position is the contention that the revocation of his probation involved the fruit of the poisonous tree doctrine of *Wong Sun* v. *United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), and that raises a fundamental constitutional question which we may review although it was not explicitly articulated below or on the briefs.[11] See *State* v. *Gilnite,* 202 Conn. 369, 373, 521 A.2d 547 (1987); *Greenwood* v. *Greenwood,* 191 Conn. 309, 315, 464 A.2d 771 (1983).

In this regard, we point out that we are not limited in our disposition of a case to those claims raised by the parties and we have frequently acted sua sponte upon grounds of which the parties were not previously apprised. See *State* v. *Gilnite,* supra; *Greenwood* v. *Greenwood,* supra. Where there is good reason, we have permitted additional argument when we believe that

---

[11] During the pendency of the appeal, the state filed a motion to dismiss, which the defendant opposed, claiming that the validity of the trial court's modification of the conditions of probation had been rendered moot by the defendant's admission of the violation of the terms of his probation and its recurring revocation. We denied the state's motion without prejudice to its renewal at the hearing in the appeal itself. Both parties addressed the mootness issue in oral argument before this court.

a case should be decided upon different issues from those presented. See *Greenwood* v. *Greenwood,* supra; *State* v. *Curcio,* 191 Conn. 27, 29, 463 A.2d 566 (1983). This is not necessary here for several reasons. First, the unique circumstances of this case call for the invocation of our inherent supervisory powers in the interests of justice. Second, the record that is before us is adequate to determine whether we should reach the merits of the defendant's claim despite certain shortcomings for which the parties appear to be responsible. Third, we perceive no reason dictated by fundamental fairness that should require the defendant, who has already served the sentence imposed for the revocation, to resort to other litigation to resolve his claim when it should and can be done now. We, therefore, will reach the merits of the defendant's appeal.

Years ago, the United States Supreme Court said that the purpose of probation is "to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable." *Burns* v. *United States,* 287 U.S. 216, 220, 53 S. Ct. 154, 77 L. Ed. 266 (1932). Accordingly, it emphasized that in administering the probation statute, the trial judge has "an exceptional degree of flexibility" in determining whether to grant or revoke probation and on what terms. Id. Punishment of an offender may not be the primary purpose of imposition of probation by a judge although it must be recognized that probation conditions may have an incidental punitive effect in that any restriction on liberty is in a sense "punishment." *Higdon* v. *United States,* 627 F.2d 893, 898 (9th Cir. 1980).

Last year, in *Griffin* v. *Wisconsin,* 483 U.S. 868, 107 S. Ct. 3164, 3167–68, 97 L. Ed. 2d 709 (1987), the United States Supreme Court, in speaking to the warrant requirement, stated: "[W]e have permitted excep-

tions when 'special needs beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' . . . A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable cause requirements. Probation, like incarceration, is 'a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.' . . . Probation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum security facility to a few hours of mandatory community service. A number of different options lie between those extremes . . . . To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.' *Morrissey* v. *Brewer,* 408 U.S. 471, 480, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972). These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. . . . These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed. . . . Supervision, then, is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. That permissible degree is not unlimited . . . ." See also *Liistro* v. *Robinson,* 170 Conn. 116, 126–29, 365 A.2d 109 (1976).

It is generally held that there is no right to be granted probation. See, e.g., *United States* v. *McLeod,* 608 F.2d

1076, 1078 (5th Cir. 1979); *United States* v. *Birnbaum,* 421 F.2d 993, 998 (2d Cir.), cert. denied, 397 U.S. 1044, 90 S. Ct. 1363, 25 L. Ed. 2d 655 (1970); *Yadyaser* v. *State,* 430 So. 2d 888, 891 (Ala. Crim. App. 1983); *State* v. *Wright,* 309 N.W.2d 891, 894 (Iowa 1981); *State* v. *DeCourcy,* 224 Kan. 278, 280, 580 P.2d 86 (1978); *State* v. *Priesmeyer,* 719 S.W.2d 873, 876 (Mo. App. 1986); N. Cohen & J. Gobert, The Law of Probation and Parole (1983) § 2.01; see also *Affronti* v. *United States,* 350 U.S. 79, 83, 76 S. Ct. 171, 100 L. Ed. 62 (1955). The view that probation, once granted, is only an "act of grace" or "act of clemency" was repudiated some time ago by the United States Supreme Court. In *Gagnon* v. *Scarpelli,* 411 U.S. 778, 782 n.4, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), the court said: "It is clear at least after *Morrissey* v. *Brewer,* [supra], that a probationer no longer be denied due process, in reliance on the dictum in *Escoe* v. *Zerbst,* 295 U.S. 490, 492, 55 S. Ct. 818, 819, 79 L. Ed. 1566 (1935), that probation is an 'act of grace.' " See also *United States* v. *Consuelo-Gonzalez,* 521 F.2d 259, 265 (9th Cir. 1975); *Commonwealth* v. *Brown,* 23 Mass. App. 612, 616, 504 N.E.2d 668 (1987). As *Griffin* points out, there is little question that "to a greater or lesser degree" probationers do not enjoy the absolute liberty of other citizens, but that which is properly dependent on observance of special probation restrictions. *Griffin* v. *Wisconsin,* supra, 3168. Any restriction, however, upon a probationer's otherwise inviolable constitutional rights can be justified only to the extent actually required by legitimate demands of the probation process in any given case. Put another way, a probationer has a diminished expectation of privacy by virtue of such demands, but such expectation may be diminished only to the extent necessary for his reformation and rehabilitation. *Owens* v. *Kelley,* 681 F.2d 1362, 1367–68 (11th Cir. 1982); *Macias* v. *State,* 649 S.W.2d 150, 152 (Tex. Crim. App. 1983).

Probation is the product of statute. See General Statutes § 53a-28 et seq. Statutes authorizing probation, while setting parameters for doing so, have been very often construed to give the court broad discretion in imposing conditions. *United States* v. *Tolla,* 781 F.2d 29, 32 (2d Cir. 1986); see, e.g., *United States* v. *Torrez-Flores,* 624 F.2d 776, 784 (7th Cir. 1980); *United States* v. *Weber,* 437 F.2d 1218, 1220 (7th Cir.), cert. denied, 402 U.S. 1008, 91 S. Ct. 2189, 29 L. Ed. 2d 430 (1971); *State* v. *Pilch,* 35 Conn. Sup. 536, 639, 394 A.2d 1364 (1977); *People* v. *Walmsley,* 168 Cal. App. 3d 636, 639, 214 Cal. Rptr. 170 (1985); *State* v. *Ripperger,* 284 N.W.2d 884, 885 (S.D. 1979); *State* v. *Blight,* 89 Wash. 2d 38, 41, 569 P.2d 1129 (1977). The significant role of statutes and the broad discretion usually accorded courts in administering the probation process means not only that statutory limitations must be observed but also that the impact of constitutional norms must be carefully evaluated.

On appeal, the "standard of review of an order revoking probation is whether the trial court abused its discretion; if it appears that the trial court was reasonably satisfied that the terms of probation had been violated and, impliedly, that the beneficial purposes of probation were no longer being served, then the order must stand." *State* v. *Roberson,* 165 Conn. 73, 80, 327 A.2d 556 (1973). In reviewing the issue of discretion, we do so according it every reasonable presumption in favor of the trial court's ruling. *State* v. *Amarillo,* 198 Conn. 285, 313–14, 503 A.2d 146 (1986). A defendant who seeks to reverse the exercise of judicial discretion, assumes a heavy burden. *State* v. *Tirado,* 194 Conn. 89, 95, 478 A.2d 606 (1984).

We turn to the defendant's claim that the imposition of the special condition of probation of drug testing one year after imposition of a sentence on the underlying felony violates General Statutes § 53a-30, his constitu-

tional rights protecting him from unreasonable searches and seizures and his right to have notice of the conditions of his probation at the time he was sentenced. We find no error in any of the trial court's rulings on these matters.

General Statutes § 53a-30, which is divided into three subsections, is concerned with, inter alia, conditions of probation imposed at the time of sentencing and with the enlargement or modifications "whether originally imposed by the court [under § 53a-30] or otherwise . . . ." General Statutes § 53a-30 (c). In addition, it also authorizes, once probation has been imposed, that the office of adult probation "may require that the defendant comply with any/or all conditions which the court *could have imposed* under subsection (a) which are not inconsistent with any condition actually imposed by the court." (Emphasis added.) General Statutes § 53a-30 (b). The plain language of this statute contemplates continuing supervision over the period of probation. See, e.g., *Mazur* v. *Blum,* 184 Conn. 116, 118, 441 A.2d 65 (1981). A cardinal rule of statutory construction requires that statutes be construed "in a manner which gives effect to the apparent intention of the legislature . . . [and that] we presume that there is a purpose behind every sentence, clause or phrase used . . . and that no part of a statute is superfluous." *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 231–32, 477 A.2d 988 (1984); *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978). In addition, "[t]his court does not interpret statutes in a vacuum, nor does it refuse to consider matters of known historical fact." *State* v. *Ellis,* 197 Conn. 436, 445, 497 A.2d 974 (1985); see *State* v. *Roberson,* supra, 77. Since probation is, first and foremost, a penal alternative to incarceration — its objectives are to foster the offender's reformation and to preserve the public's safety — a sentencing court must have the discretion

to fashion those conditions of probation it deems necessary to ensure that the individual successfully completes the terms of probation. *United States* v. *Williams,* 787 F.2d 1182, 1185 (7th Cir. 1986).

In keeping with the continuing supervision and authority given the court[12] under the statute, the court could modify or enlarge the conditions whether any such condition had been imposed at the time of sentencing "or otherwise." The sentencing court itself could have imposed the special condition. Had it been so included in the offer of probation in the first instance and had the defendant believed, as he seems to intimate, that probation with such a condition would be less acceptable to him than serving the sentence that might otherwise be imposed, he was under no duty to accept probation nor could the sentencing court require him to do so. See, e.g., *State* v. *Montgomery,* 115 Ariz. 583, 584, 566 P.2d 1329 (1977); *In re Osslo,* 51 Cal. 2d 371, 377, 334 P.2d 1 (1958); *Franklin* v. *State,* 87 Idaho 291, 298, 392 P.2d 552 (1964); *State* v. *Randolph,* 316 N.W.2d 508, 510 (Minn. 1982); *State* v. *Whalen,* 367 N.W.2d 186, 187 (S.D. 1985); see 24 C.J.S., Criminal Law § 1571 (2), p. 459. It has been held that while a potential probationer may reject the offer of probation, if he accepts it, he must accept all the conditions sought and cannot accept some and reject others. See *People* v. *Oppenheimer,* 236 Cal. App. 2d 863, 866, 46 Cal. Rptr. 476 (1965); N. Cohen & J. Gobert, supra, § 5.07.

In this case, the defendant was placed on probation for a robbery in which he participated to get money for drugs. Certainly the challenged condition could have

---

[12] It is not necessary for us, in the circumstances of this case, to determine whether the office of adult probation could have required the defendant, without a court order, to have submitted to the conditions imposed in fact by the trial court, *Barall, J.* This is so because the challenged conditions were imposed by the court after application and hearing and a finding of good cause.

been imposed originally, given the fact that "restrictions [on a probationer] are meant to assure that the probation serves as a period of genuine rehabilitation and that the community [not be harmed] by the probationer's being at large." *Griffin* v. *Wisconsin,* supra, 3168. Moreover, had the trial court done so, it would not have unduly intruded on any constitutionally protected right to which the defendant would have been entitled. It is appropriate to say that in determining whether a condition of probation impinges unduly upon a constitutional right, a reviewing court should evaluate the condition imposed under our Adult Probation Act in the following context: "The conditions must be 'reasonably related' to the purposes of the [Probation] Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement." *United States* v. *Williams,* supra, 1185; *United States* v. *Pierce,* 561 F.2d 735, 739 (9th Cir. 1977), cert. denied, 435 U.S. 923, 98 S. Ct. 1486, 55 L. Ed. 2d 516 (1978); see also *United States* v. *Consuelo-Gonzalez,* supra, 264–65 n.14. The challenged conditions would have passed this test if imposed originally.

The court properly imposed the special condition one year after sentencing. It plainly had the authority to do so in the exercise of its discretion under § 53a-30 (c) which encompasses ongoing supervision. We have said: "To modify, is ordinarily to change the mode in which a subject is dealt with, rather than to change the subject itself." *Central Railway & Electric Co.'s Appeal,* 67 Conn. 197, 210, 35 A. 32 (1895). The trial court's exercise of its power to "modify" in this case did not change the subject itself, but did change the manner in which the defendant's probation was administered.

It did so after notice and an adversarial hearing and "for good cause shown" in a manner that comported with due process. See, e.g., *Armstrong* v. *Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965). Moreover, due process is flexible and calls for those procedural protections that the particular situation demands. *Morrissey* v. *Brewer,* supra, 481. In imposing the special condition, the trial court did not violate the defendant's constitutional or statutory rights. It recognized the reasonable relationship required to be demonstrated by the evidence before it between the purposes sought to be served by probation, the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers and the legitimate needs of law enforcement.

In attacking this postsentence imposition of the special condition, the defendant also argues that he was entitled to notice of all of the conditions of probation at the time of sentencing. In doing so, he fails to recognize the ongoing authority of the court in overseeing the probation process. " 'The success of probation as a correctional tool is in large part tied to the flexibility within which it is permitted to operate.' ABA Standards Relating to Probation § 3.3 commentary (Approved Draft 1970).' " *Buckley* v. *Quincy Division of District Court Department,* 395 Mass. 815, 818, 482 N.E.2d 511 (1985). " 'The court may revoke or modify any condition of probation . . .' [that] will subserve the ends of justice and the best interests of both the public and the defendant." *Burns* v. *United States,* 287 U.S. 216, 221, 53 S. Ct. 154, 77 L. Ed. 266 (1932).

Initially, we note that the general conditions under § 53a-30 (a) include that the defendant "(7) refrain from violating any criminal law of the United States, this state or any other state . . . [and] (9) [that he] satisfy any conditions reasonably related to his rehabilitation." Moreover, General Statutes § 54-108,

addressing the duties of probation officers, provides in part: "They shall furnish to each person released under their supervision a written statement of the conditions of probation and shall instruct him regarding the same. They shall keep informed of his conduct and condition and use all suitable methods to aid and encourage him and to bring about improvement in his conduct and condition." We are entitled to presume, absent any showing to the contrary, that the defendant's probation officer did these things. See *Warren* v. *State,* 499 So. 2d 55, 56 (Fla. App. 1987). Moreover, we may also presume that the defendant was aware of all of the original conditions, including § 53a-30 (a) (7) and (9), and that he had accepted all of the original conditions. See *United States* v. *Markovich,* 348 F.2d 238, 240 (2d Cir. 1965). Absent a showing to the contrary, a probationer is chargeable with knowledge that a breach of any condition may well result in revocation and serving the suspended sentence. *Holdren* v. *People,* 168 Colo. 474, 478, 452 P.2d 28 (1969); see *State* v. *Roberson,* supra, 77.

It is simply unreasonable for this defendant, found guilty of robbery in the first degree intended to generate money to pay for drugs for himself, to believe that if, during the ongoing contact with his probation officer, the use of drugs was reasonably suggested by his conduct or appearance, he would never expect to be subject to some type of drug testing. Despite the warning by his probation officer not to use drugs, including marihuana, he said he would use marihuana and did so. Under the circumstances, the court was entitled to impose the urinalysis testing. It clearly was reasonably related to the defendant's rehabilitation and to the goals of probation. It was a foreseeable consequence, not only of a full due process hearing, but out of the reasonable suspicions of an experienced probation officer. This special condition was not, as in *Carmo* v. *State,* 378 So. 2d

850, 851 (Fla. App. 1979), a statutorily prohibited "additional" term or condition of probation but a modification and one uniquely appropriate to the defendant's conduct while on probation. See General Statutes § 53a-30 (a) (7) and (9); *Carradine* v. *United States,* 420 A.2d 1385, 1390 (D.C. App. 1980) (probationer did not act or fail in a way that "foreseeably" could result in revocation).

The defendant also maintains that, in any event, this postsentence special condition was invalid because it was not imposed by the judge who sentenced him originally. We reject this claim. To legitimatize that argument would not only unduly hamper the administration of the court's supervisory power over probation but would give sanction to a practice that has no basis in constitution, statute, decision or rule of practice in this state and for which the defendant has advanced none.

We believe that the urinalysis test was a search and seizure that implicated the defendant's fourth and fourteenth amendment rights. See *Schmerber* v. *California,* 384 U.S. 757, 767, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966); *Shoemaker* v. *Handel,* 619 F. Sup. 1089, 1098 (D.N.J. 1985), aff'd, 795 F.2d 1136 (3d Cir.), cert. denied, 479 U.S. 986, 107 S. Ct. 577, 93 L. Ed. 2d 580 (1986); *Tucker* v. *Dickey,* 613 F. Sup. 1124, 1129–30 (W.D. Wis. 1985); *Storms* v. *Coughlin,* 600 F. Sup. 1214, 1218–20 (S.D.N.Y. 1984); *Roman* v. *State,* 570 P.2d 1235, 1243 (Alaska 1977); *People* v. *Richards,* 76 Mich. App. 695, 698–99, 256 N.W.2d 792 (1977); *Macias* v. *State,* supra. It implicated the interests in human dignity and privacy at risk in *Schmerber.* While the required urinalysis involved no forced penetration of body tissues, as does a blood test, it did involve the involuntary extraction of bodily fluids and, in that sense, if not literally, it was an " 'intrusion beyond the body's surface.' " *Tucker* v. *Dickey,* supra; *Schmerber* v. *California,* supra, 769. The fourth amendment pro-

tects persons and not places and, in doing so, gives them the right to be free from "unreasonable government intrusions into their legitimate expectations of privacy." *United States* v. *Chadwick,* 433 U.S. 1, 7, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977). The United States Supreme Court has held that "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell* v. *Wolfish,* 441 U.S. 520, 559, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). Although the fourth amendment generally requires a warrant based on probable cause before a search occurs, exceptions exist to this requirement when a legitimate governmental purpose makes the intrusion into one's privacy reasonable. See *Griffin* v. *Wisconsin,* supra; *Donovan* v. *Dewey,* 452 U.S. 594, 600, 101 S. Ct. 2534, 69 L. Ed. 2d 262 (1981); *United States* v. *Consuelo-Gonzalez,* supra, 264–66. This is consistent with the diminished expectation of privacy that a probationer, such as this defendant, is to expect in this governmental program to normalize his relations with society. The standard required to justify the search here by a probation officer while properly less stringent than probable cause, we determine, is that which may be found in the "emerging and now rather stabilized concept of 'reasonable suspicion,' " that is used in other contexts in and about the criminal law. *United States* v. *Scott,* 678 F.2d 32, 35 (5th Cir. 1982). The reasonable suspicion standard requires no more than that "the authority acting [here the defendant's probation officer] be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a belief . . . that a condition of [probation] has been or is being violated." *United States* v. *Scott,*

supra;[13] see *State* v. *Velasquez,* 672 P.2d 1254, 1258 n.2 (Utah 1983).

The search and seizure by way of urinalysis in this case was constitutionally sound under this standard. The defendant's consent was not needed for the urine test, given his status, the reasonableness of the imposition of the testing condition and its obvious relation to his rehabilitation and other goals of probation. The broad power to impose conditions "permits insulating the individual from the conditions that led him into trouble." *United States* v. *Moore,* 486 F.2d 1139, 1174 (D.C. Cir.), cert. denied, 414 U.S. 980, 94 S. Ct. 298, 38 L. Ed. 2d 224 (1973). As with parolees, it may be crucial to the success of a probation program for a probation officer to have access to some information that a probationer may be unwilling to divulge and so a probation officer "needs to be able to act in a manner that could not be tolerated if done by a policeman or other agent of the state with respect to an ordinary citizen" under the fourth amendment. See *State* v. *Velasquez,* supra, 1259; see also *Roman* v. *State,* supra, 1243. The defendant's suggestion that probation, without something more, such as exigent circumstances, implies that his consent is needed lacks merit. Exigent circumstances exist when the societal costs of obtaining a warrant sufficiently outweigh the reasons for prior recourse to a neutral magistrate. *Arkansas* v. *Sanders,* 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979). Under the

---

[13] Although *United States* v. *Scott,* 678 F.2d 32 (5th Cir. 1982), involved a parolee, we deem its standard applicable to probationers. In doing so, we note that in determining whether the fourth amendment protection against unreasonable searches and seizures has been violated, some courts do not distinguish between probation status or parole status but treat them as the same. See, e.g., *United States* v. *Consuelo-Gonzalez,* 531 F.2d 259, 266 (9th Cir. 1975); *State* v. *Pinson,* 104 Idaho 227, 230 n.1, 657 P.2d 1095 (1983); *State* v. *Earnest,* 293 N.W.2d 365, 368 n.2 (Minn. 1980); *Seim* v. *State,* 95 Nev. 89, 94, 590 P.2d 1152 (1979); *State* v. *Velasquez,* 672 P.2d 1254, 1258 n.2 (Utah 1983).

circumstances of this case, including the defendant's status, the constitutional and statutory authority permitting the special condition when it was imposed and its imposition after notice and hearing, the exigent circumstances concept militates strongly in favor of the state and hardly aids the defendant.

Another claim of the defendant is that the order of the trial court, *Barall, J.,* imposing special conditions one year after the original sentencing violates his constitutional right against double jeopardy under the fifth amendment.[14] We do not agree.

The guarantee against double jeopardy proscribes exposure to criminal prosecutions for the same offense after conviction or acquittal and protects against multiple punishments for the same offense. *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). Such exposure is absent from proceedings that are not " 'essentially criminal.' " *Breed* v. *Jones,* 421 U.S. 519, 528, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975). "The essential nature of a proceeding is not determined by its form or label . . . . *United States* v. *U.S. Coin & Currency,* 401 U.S. 715, 718, 91 S. Ct. 1041, 28 L. Ed. 2d 434 (1970). A proceeding is criminal for double jeopardy purposes, if it imposes a sanction intended as punishment. See *Helvering* v. *Mitchell,* 303 U.S. 391, 399, 58 S. Ct. 630, 82 L. Ed. 917 (1938)." *State ex rel. Flowers* v. *Department of Health,* 81 Wis. 2d 376, 383, 260 N.W.2d 727 (1978). The circumstances of the defendant's revocation do not fit within these principles. The fact that his conduct resulting in the revocation was determined in the manner that it was does not transform the revocation proceeding into a criminal prosecution. Actually, a probation

---

[14] The fifth amendment to the United States constitution provides in part: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ."

revocation hearing does not require all of the procedural components associated with an adversary criminal proceeding. *Gagnon* v. *Scarpelli,* supra, 783 n.5, 788–89; *Morrissey* v. *Brewer,* supra, 480, 489; *State ex rel. Flowers* v. *Department of Health,* supra, 384. For example, the authorities are virtually unanimous in concluding that the standard of proof used in a criminal trial, namely "beyond a reasonable doubt," is not applicable to a probation revocation hearing. See, e.g., *United States* v. *Warner,* 830 F.2d 651, 655 (7th Cir. 1987); *In re Coughlin,* 16 Cal. 3d 52, 56, 545 P.2d 249, 127 Cal. Rptr. 337 (1976); *State* v. *Case,* 189 Neb. 493, 495, 203 N.W.2d 492 (1973); *Dail* v. *State,* 96 Nev. 435, 441, 610 P.2d 1193 (1980); *State* v. *Cormier,* 121 N.H. 528, 430 A.2d 1133 (1981); *People* v. *Hemphill,* 120 App. Div. 2d 767, 769, 501 N.Y.S.2d 503, appeal denied, 68 N.Y.2d 668, 496 N.E.2d 492, 505 N.Y.S.2d 1034 (1986); *State* v. *Freeman,* 47 N.C. App. 171, 175, 266 S.E.2d 723, review denied, 301 N.C. 99, 273 S.E.2d 304 (1980); *Caudill* v. *State,* 637 P.2d 1264, 1265–66 (Okla. Crim. App. 1981); *Morishita* v. *Morris,* 621 P.2d 691, 692 n.1 (Utah 1980); see also *State* v. *White,* 169 Conn. 223, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975).

Revocation hearings are not concerned with punishment or retribution. The probation process, in seeking to normalize the probationer into society as soon as reasonably possible, presents the ultimate question whether the probationer is still a "good risk" to be continued in that status. *Gagnon* v. *Scarpelli,* supra, 783; *State ex rel. Flowers* v. *Department of Health,* supra, 385. This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public. The ends of probation revocation are thus distinct from the punitive functions of the criminal law and a number of consider-

ations relevant to revocation include factors that are irrelevant to a criminal prosecution. See *State ex rel. Flowers* v. *Department of Health,* supra. The element of "punishment" in probation revocation of this defendant is attributable to the crime for which he was originally convicted and sentenced. Thus, any sentence this defendant had to serve as the result of the violation of the special condition was "punishment" for the crime of which he had originally been convicted. Revocation is a continuing consequence of the original conviction from which probation was granted. The doctrine of double jeopardy is not applicable as the defendant claims.

In summary, the special condition complained of was properly imposed on the defendant. In doing so, none of his rights was violated as claimed. There was no abuse of discretion. The revocation of his probation was not in error. Accordingly, this appeal is moot. "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944); *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 452, 352 A.2d 291 (1974); *State* v. *Johnson,* 11 Conn. App. 251, 256–57, 527 A.2d 250 (1987). There is no practical relief that can be afforded the defendant given the circumstances of this case.

Accordingly, the defendant's appeal is dismissed as moot.

In this opinion the other justices concurred.