[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The defendants, Oaks Condominium Association and members of its board of directors, Charles Lohrenz, Susan Smolen, Pam Moffitt, Tyrone Griffi, Roberta Brooks, Wally Roberts, Carol Beers, Edward Wheeler, Carolyn Newton, Linda Masvidal Libby, Maureen Bell and James Sweetman ("Association") have moved for summary judgment on their first special defense, which is addressed to all counts of the plaintiffs' complaint. The plaintiffs are Vincent Celentano, Mary Celentano, Lawrence I. Levy, Marvin R. Leventhal and Richard A. LoRicco. They claim that the defendants are liable to them for payment of rent due under a document titled "Condominium Ground Lease." The lease relates to the land on which the residential condominium units known as the Oaks Condominium in West Haven is located. The plaintiffs, owners of the fee interest in the land to which the lease applies, allege that the declarant of the condominium was Melrose Apartments, Inc., which leased the land from the plaintiffs and declared a condominium in which the units consisted of a fee interest in an apartment and an interest in the ground lease, and that the defendants are liable for rent due under the ground lease by the terms of "condominium documents [that] require that the defendants fulfill all applicable terms and obligations thereof relating to the timely collection and payment of monthly ground lease rental payments from unit owner/members of the defendant Association." (Third Amended Revised Complaint, para. 9). The Association asserts in its first special defense that the Connecticut Condominium Act, Conn. Gen. Stats. §§ 47-68a, et seq. ("Act"), does not permit the creation of a condominium that combines a fee interest in a unit with a leasehold interest in the land on which the units are built, and that the condominium declaration upon which the plaintiffs base their claims is therefore unenforceable.
Standard of review
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine CT Page 12527 issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49 (formerly § 384). See Sherwood v. Danbury Hospital, 252 Conn. 193, 201 (2000); Riverav. Double A Transportation, Inc., 248 Conn. 21, 24 (1999); Alvarez v. NewHaven Register, Inc., 249 Conn. 709, 714 (1999) Nichols v. LighthouseRestaurant, Inc., 246 Conn. 156, 163 (1998); Peerless Ins. Co. v.Gonzalez, 241 Conn. 476, 481 (1997);
The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Rivera v. Double A Transportation, Inc., supra, 248 Conn. 24. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Witt v. St. Vincent's MedicalCenter, 252 Conn. 363, 373 n. 7 (2000).
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. Sherwood v. Danbury Hospital, supra, 252 Conn. 201; Serrano v.Burns, 248 Conn. 419, 424 (1999); Connell v. Colwell, 214 Conn. 242,246-47 (1990). In Connecticut, a directed verdict may be rendered only if, on the evidence viewed in, the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. United Oil Co.v. Urban Redevelopment Commission, 158 Conn. 364, 380 (1969); Vuono v.Eldred, 155 Conn. 704, 705 (1967).
In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski, 206 Conn. 495, 500 (1998); Telescov. Telesco, 187 Conn. 715, 718 (1982).
Summary judgment may be granted on the merits of a special defense.Doty v. Mucci, 238 Conn. 800, 802-803 (1996); Boucher Asency, Inc. v.Zimmer, 160 Conn. 404, 409 (1979).
Facts Material to the Issue Raised in the First Special Defense
In their brief in opposition to the defendant's motion, the plaintiffs did not assert that there is any genuine dispute as to any material fact. In a later brief filed in response to the Association's reply brief, the plaintiffs assert that "the intention of the plaintiffs at the CT Page 12528 time of creating The Oaks with respect to the nature and scope of the `property' submitted under The Act as well as their conduct evidencing that intention" is a disputed fact. The provisions of the statute at issue and the enforceability of the lease assignment against the unit owners do not depend on what the plaintiffs' intentions were. The plaintiffs have failed to identify a genuine issue of material fact with regard to the legal issue raised.
The plaintiffs have alleged in their complaint, at paragraph 5, that Melrose Apartments, Inc. ("Melrose") was the declarant of The Oaks Condominium. They further allege that the declaration has the legal effect of making the Association liable for payments of rent due by the terms of the ground lease. In the condominium declaration, Melrose disclosed, and the plaintiffs do not dispute, that the plaintiffs consented to what amount to an assignment of the ground lease by Melrose to the Association and its members.
The facts material to the defense upon which the Association seeks summary judgment are as follows. Before November 30, 1982, the plaintiffs other than Marie Celantano were the record owners of the land and apartment buildings at 79/80 Claudia Drive in West Haven. On August 1, 1981, the plaintiffs and Melrose executed an Option to Purchase, by which the plaintiffs agreed to sell the buildings at 79/80 Claudia Drive to Melrose subject to a ninety-nine year leasehold on the land on which they were located. On the basis of that option agreement, Melrose bought the building at 79 Claudia Drive on November 30, 1982, taking back a mortgage in the amount of $1,606,000. On the same date, the plaintiffs and Melrose executed two ninety-nine year leases for the land at 79 and 80 Claudia Drive on which the apartments are located. Both of these leases provided for rent in the amount of $16,200 per year for the first seven years and increases each year thereafter, rising to $60,912 in the fifteenth year of each lease. There are fifty-four units in the building at 79 Claudia Drive. Also on November 30, 1982, Melrose declared a condominium consisting of its leasehold interest in the land and its ownership of the building. Melrose issued a Declaration of Condominium dated November 30, 1982, that defines the property being declared to be a condominium as "The leasehold interest of the Declarant in and to that piece or parcel of land situated at 79 Claudia Drive, West Haven, Connecticut and more particularly described in Schedule A attached hereto the buildings, all improvements and structures thereon, and rights and appurtenances belonging thereto."[1] The declaration defines a unit owner" as "the person or persons owning a Unit in fee simple absolute, or leasing a unit as hereinafter provided, and an undivided interest in the fee simple or leased estate of the common areas and facilities in the percentage specified in this Declaration."
CT Page 12529 Melrose sold units in the building at 79 Claudia Drive to purchasers by way of a document titled "Deed of Condominium Unit and Assignment of Leasehold Interest." The property conveyed in the deed to each unit owner was "[t]he following described Leasehold Estate and Real Property with appurtenances thereto located in the Town of West Haven . . . known as Unit [number] of The Oaks Condominium, An Expandable Condominium, together with an undivided 1.76(%) percent interest in the common elements and appurtenant thereto, and all of the right, title and interest of the Grantor in and to a 1.76(%) percent and fractional interest in and to a certain leasehold estate created pursuant to the terms and conditions of a certain Ground Lease by and between Richard A. LoRicco, et als[.] and Melrose Apartment, Inc. dated the 30th day of November, 1982 . . ." The deed stated that "[s]aid premises are subject to the terms and conditions of a ground lease dated November 30, 1982 . . ."
The lease referred to in the deeds issued to unit owners provided for a lease term of ninety-nine years. The lease further provided that the unit owners collectively could purchase the land to which the lease applied at a juncture eleven years after the execution of the lease, for the lesser of the current appraised market value of the land or thirteen percent of the then current appraised market value of the land and improvements, with an arbitration procedure to resolve disagreements as to value.
The plaintiffs have sued the defendants for nonpayment as successors in interest to the obligations of Melrose under the ninety-nine year ground lease. They have also asserted that the Association's failure to collect and remit monthly ground rents from unit owners constitutes negligence, conversion, and a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stats. §§ 42-110a, et seq.
Enforceability of the Obligation to Pay Rent Pursuant to the Ground Lease
The defendants allege that the declaration created a hybrid transaction that is not authorized by the 1976 Condominium Act, and that the declaration and the associated assumption of unit purchasers of obligations to pay the ground lease are therefore unenforceable. The Act, on its face, differentiates between residential and nonresidential condominiums. This court's analysis is confined to the context presented, that is, residential. The Association's position requires close scrutiny of the provisions of the Condominium Act in effect in 1982.
In construing a statute, the court's fundamental objective is to ascertain and give effect to the apparent intent of the legislature. In seeking to discern that intent, courts look to the words of the statute itself, to the legislative history and circumstances surrounding its CT Page 12530 enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. Peabody N.E., Inc. v. Dept. ofTransportation, 250 Conn. 105, 121 (1999); Fimiani v. Star GalloDistributors, Inc., 248 Conn. 635, 642 (1999); General Motors Corp. v.Dohmann, 247 Conn. 274, 286 (1998); Ferrigno v. Cromwell DevelopmentAssociates, 244 Conn. 189, 195 (1998). Courts must apply the legislative definition of terms in a statute. Connecticut Light Power Co. v.Texas-Ohio Power. Inc., 243 Conn. 635, 653 (1998); Rose v. Freedom ofInformation Commission, 221 Conn. 217, 225 (1992).
A cardinal rule of statutory construction is that no part of a statute is to be regarded as superfluous, and courts must presume that there is a purpose behind every sentence, clause or phrase used State v. Smith,207 Conn. 152, 168 (1988); Waterbury Petroleum Products, Inc. v. CanaanOil Fuel Co., 193 Conn. 208, 231-32 (1984). In addition, the Supreme Court "does not interpret statutes in a vacuum, nor does it refuse to consider matters of known historical fact." State v. Smith, supra,207 Conn. 168.
The defendants assert that the Act authorizes just two kinds of residential condominiums: I) those in which the unit owner acquires a freehold interest in a unit and an undivided interest in all common elements, including the land on which the unit is built, and 2) those in which a lessee leases a unit and an undivided interest in leased common elements, with a right to purchase during the term of the lease, which must be for not less than fifty years. (The Association does not explain how such an interest would differ from a usual apartment lease.) Since the Melrose declaration provides for a fee simple interest in an apartment but only a leasehold interest in the land on which it stands, the Association asserts that it fails to comport with the form authorized in the statute, so that obligations created pursuant to the declaration are unenforceable.
The Connecticut Supreme Court has held that compliance with the requirements of the Condominium Act is "a condition precedent to attaining condominium legal status." Hall Manor Owner's Association v.West Haven, 212 Conn. 147, 153 (1989).
The Condominium Act provides, at Conn. Gen. Stat. § 47-70(d):
 [t]he property submitted to a condominium declaration pursuant to this chapter, other than a nonresidential condominium, shall be conveyed by the declarant to purchasers in fee simple absolute, subject only to covenants, easements and liens, limited as follows: CT Page 12531
 (1) Property reservation which land developers commonly convey or dedicate to local bodies, public or private utilities or other easements, for the purpose of bringing utilities to or through the condominium, access to or through the condominium, and drainage to, from, and through other land in the vicinity of the condominium . . .;
 (2) Taxes and assessments imposed by any public body having authority to assess and tax property, or by a property owners' association, which under law constitute liens before they are due and payable;
 (3) Mutually beneficial property restrictions which would be enforceable by other owners in the subdivision or project of which the condominium is a part for more than five years after the first declaration in a planned project. Such restrictions shall not give declarant or any other person more power per unit owned than that which is proportionately equal to his fraction of the number of similar units planned or constructed in such subdivision or project, and the property shall not be subject to leasehold or reversionary interest.
"Property," an operative word in 47-70(d), is defined at § 47-68a(1) as follows:
 "Property" means and includes the land, all buildings, all improvements and structures thereon, and all easements, rights and appurtenances belonging thereto, which have been or are intended to be submitted to the provisions of this chapter.
Read together, the foregoing provisions of the statute would seem to support the Association's interpretation that units sold in a residential condominium cannot be on leased land.
The definition portion of the act, however, contains a definition of "leasehold condominium." That term is defined at Conn. Gen. Stat. §47-68a(cc) as follows:
 property submitted to the provisions of this chapter by the fee owner, whereby unit leases are issued for a period not less than fifty years, and provided, in a CT Page 12532 residential leasehold condominium, such lease provides that the lessee shall have the option to purchase the fee simple title to the demised property during the term of the lease at a price stated or by a method stated for subsequent determination of the total price.
The Act defines "lessee" as "a unit owner of an undivided interest in a leasehold on a fee which has been submitted to the provisions of this chapter." Conn. Gen. Stat. § 47-68a(bb). The Condominium Act differentiates between a "unit," which is defined as "a part of the property including one or more rooms or designated spaces on one or more floors . . ." and "common elements," which are defined as "all portions of the condominium other than units." Conn Gen Stat. § 47-68a(b) and (e). The definition of "property" quoted above thus includes both units and common elements.
The Act preserves the differentiation between leasehold condominiums and fee simple condominiums in Conn. Gen. Stat. § 47-72. That section of the Act provides that "[c]onveyance of title from declarant to any unit or leasehold . . . shall be by warranty deed or lease, conveying to the purchaser of such unit an indefeasible title in fee simple absolute or leasehold estate to the unit and to the percentage of undivided interest in the common elements appertaining to the unit, subject only to covenants, easements and liens pursuant to section 47-70 and shall not reserve to the seller or to any third party any leasehold or reversionary interest in a fee simple condominium."
The Association reads this provision as prohibiting ground leases, which constitute leasehold or reversionary interests. Its reading ignores, however, the fact that § 47-72 prohibits only the reservation of a leasehold or reversionary interest "in a fee simple condominium," while the provision clearly recognizes that title to the declarant's leasehold interest may be conveyed by a lease. It would not be sensible to interpret a statute that explicitly provides for conveyance of interest in leaseholds as prohibiting a lessor from creating a leasehold interest.
Furthermore, the 1976 amendment preserved the 1963 Act's provisions with regard to taxation of leased land:
 [i]n the event the land or the building, including common areas and facilities, is separately owned, and leased to the unit owner for a period of not less than fifty years, and such lease, duly recorded, provides that the lessee shall pay all such taxes, such unit CT Page 12533 and its percentage of undivided interest in the common areas and facilities shall be deemed a parcel and shall be separately assessed and taxed in the name of the lessee.
Conn. Gen. Stats. § 47-79(a). This provision would be mere surplusage if the 1976 amendment had prohibited condominiums on leased land.
Application of the tenets of statutory construction set forth above leads this court to the conclusion that the Condominium Act as it existed in 1982 did not prohibit a declarant from creating a condominium by which a purchaser acquired a fee simple interest in a unit and an undivided interest in a leasehold for the common elements, including the land on which the complex was built. If conveyance of leasehold interests were prohibited, § 47-72 would not have provided for conveyance of leasehold interests by lease. The prohibition in that statute of retention of reversionary interests applies, on its face, only to fee simple condominiums, so that a declarant could not convey an apartment unit in fee simple but retain a reversionary interest in it. The express reservation of the application of the prohibition to fee simple condominiums differentiates from leasehold condominiums. If no differentiation were intended, the phrase "fee simple condominiums" would be unnecessary surplusage.
The declaration and deeds in this case do not provide for reversion of ownership of the fee simple units, but only of the leased common elements. Thus, the prohibition of § 47-72 is inapplicable.
Connecticut's original Condominium Act, Public Acts 1963, No. 63-605, provided explicitly that a unit owner had a lease or fee interest in his or her unit and "an undivided interest in the fee simple or leased estate, of the common areas and facilities . . ." In a 1969 law journal article, Connecticut was described as one of the states that permitted leasehold condominiums, which the author referred to as a condominium complex built on leased land. Reskin, M., "Leasehold Condominiums," 1969 Conn.L.Rev. 37.
When the General Assembly debated the 1976 revision, PA. 76-308, Rep Burnham offered an amendment which he explained "defines leases . . . and what a leasehold condominium is," and commented that "[t]he present law in Connecticut provides for leasing, so this amendment is just consistent with the prior laws." 19 H.R. Proc. Pt. 7, 1976 Sess., p. 2686. A sponsor of the bill noted that the effect of the amendment was that it "might in areas where land is very expensive, reduce the initial cost to the purchaser and we think it's a good amendment." 19 H.R. Proc., supra, p. 2687. This comment clearly indicates an expectation that it would cost CT Page 12534 less to buy a unit and pay part of a lease for the land than to buy a unit whose price included part of the purchase price for the land. Another member of the legislature questioned whether recognition of leasehold condominiums required a redrafting of a provision that stated that "owner or owners of any property may submit to the terms of this act . . ." 19 H.R. Proc., supra, p. 2687-8 8. Apparently referring to the fact that the lessor might not be the declarant where units were built on leased land, this legislator, Mr. Lowden, asked "Does [this] amendment allowing, as I assume it does, leasehold condominiums, amend that section or would there be any conflict?" Id. He was assured that the amendment providing for leasehold condominiums created no conflict in the drafting. 19 H.R. Proc., supra, p. 2688.
The legislative history of the 1976 amendments contains no suggestion that it was an aim of the legislature to prohibit the development of condominiums on leased land. When the legislature enacted the Common Interest Ownership Act, Conn. Gen. Stats. §§ 47-74c, in 1983, the authorization of leaseholds continued. See Conn. Gen. Stat. §47-202(18) ("`Leasehold common interest community' means a common interest community in which all or a portion of the real property is subject to a lease the expiration or termination of which will terminate the common interest community or reduce its size.")
Further support for the plaintiffs' construction of the Act derives from § 47-74c, which prohibits a declarant from leasing recreational facilities to unit owners. Recreational facilities are defined at §47-68a(f) as "that portion of the common elements intended for recreational, social and similar community use by the unit owners." If the Act precluded leases of any kind with regard to the common elements, it would be redundant to prohibit leases with regard to a particular kind of common element.
This court finds no reason to construe the provisions of the Condominium Act in effect in 1982 as creating a period in which, unlike the prior and later periods covered by the versions of the condominium statutes discussed above, a condominium could not occupy leased land.
Since the Condominium Act in effect in 1982 provided for leasehold condominiums, the provisions of the act that the Association reads as precluding leaseholds can be harmoniously read as applying only to fee simple condominiums, that is, those built on land owned and conveyed to unit owners by the declarant, not to leasehold condominiums.
Conclusion
The motion for summary judgment is denied. CT Page 12535
 Beverly J. Hogson Judge of the uperior Court