### STATE OF CONNECTICUT *v.* PASQUALE VILLANO (11515)

FOTI, SCHALLER and CRETELLA, Js.

Argued October 4—decision released December 7, 1993

*Deborah DelPrete Sullivan,* assistant public defender, for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James Dinnan,* assistant state's attorney, for the appellee (state).

SCHALLER, J., The defendant, Pasquale Villano, appeals from the judgment of the trial court revoking his probation and committing him to the custody of the commissioner of corrections. The trial court imposed the four and one-half years suspended portion of a sentence that the defendant had received for his 1987 conviction of risk of injury to a child in violation of General Statutes § 53-21.[1] The defendant claims that the trial court (1) improperly found that the defendant had violated the special condition of his probation pursuant to General Statutes § 53a-32,[2] and (2) abused its dis-

---

[1] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[2] General Statutes § 53a-32 provides in pertinent part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge . . . . Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. . . .

"(b) If such violation is established, the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

cretion by revoking the defendant's probation.[3] We affirm the judgment of the trial court.

On May 28, 1987, the defendant pleaded guilty under the *Alford*[4] doctrine to the charge of risk of injury to a child, and, on May 29, 1987, the court sentenced the defendant to ten years in prison, suspended after five and one-half years, with five years probation. The defendant began his probationary period on May 29, 1991. On that date, the defendant and his probation officer signed a form titled "Conditions of Probation." This document outlined the standard conditions of the defendant's probation, and also listed as a special condition the defendant's participation in a sex offender treatment program.

His probation officer then referred the defendant on May 31, 1991, to special services at The Connection Agency, Inc. (Connections), an organization in Middletown that offers treatment for sexual behavior problems. Lisa Heitmann, a treatment specialist at Connections, completed an evaluation of the defendant in July, 1991, which resulted in Heitmann's recommendation that the defendant initially take part in the "cognitive lab," a twelve week psycho-educational program that would prepare the defendant for group therapy.

In February, 1992, the probation officer caused a warrant to be issued for the defendant's arrest pur-

---

[3] The defendant also requests that we reconsider our decision in *State* v. *Baxter,* 19 Conn. App. 304, 563 A.2d 721 (1989). In that case, we determined that there is no constitutional requirement that the trial court must find that a violation of probation was willful, except in the limited circumstances set forth in *Beardon* v. *Georgia,* 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983) (where an indigent defendant fails to pay a fine or restitution, willful disobeyance of the condition of probation must be shown). We decline to reconsider our decision in *Baxter.*

[4] *North Carolina* v. *Alford,* 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

suant to General Statutes § 53a-32, alleging that the defendant had violated the condition of his probation that he receive sex offender treatment. The warrant detailed the defendant's probation history and alleged specifically that the defendant failed to report to Connections on January 16, 1992, and failed to meet with Heitmann on January 29, 1992, in order to discuss his treatment plan and to sign the papers necessary for him to take part in the treatment program. The warrant also stated that Connections discharged the defendant from its treatment program due to "noncompliance and avoidance of treatment."

At the probation revocation hearing, the probation officer, Heitmann and the defendant testified. The following evidence was presented. Connections scheduled the defendant to begin the cognitive lab in August, 1991, but the defendant then asked his probation officer to allow him to seek a second evaluation through Catholic Family Services. The defendant testified on cross-examination that he sought the second opinion because he and Heitmann "were [not] clicking too well." The probation officer agreed to the second opinion, despite her awareness that, although Catholic Family Services had the capacity to evaluate the defendant, it did not have a program for the treatment of sex offenders. The defendant participated in the evaluation at Catholic Family Services from August until December, 1991.[5]

Since Catholic Family Services could not treat the defendant as a sex offender, he was referred again to

---

[5] During this period, the defendant did not attend any programs at Connections. The probation officer testified that she did not expect the defendant to attend any programs at Connections until the defendant completed the Catholic Family Services evaluation. Personnel at Connections apparently believed that the defendant would continue treatment at Connections, and when the defendant did not appear, Connections terminated the defendant from its program. At the request of the probation officer, however, the defendant was reinstated.

Connections. In order for the defendant to begin actual treatment at Connections, he had to sign a contract with that agency. Connections originally scheduled the defendant for an appointment at the New Haven probation office on January 15, 1992, in order to sign the contract. The defendant did not appear for this appointment.[6] Connections then scheduled the defendant to sign the contract and to begin the cognitive lab treatment at Connections on January 16, 1992. The defendant twice called Heitmann on January 16 and told her that he was unable to obtain transportation from his home in New Haven to Connections in Middletown. The defendant did not sign the contract or attend the cognitive lab on that date.

A pair of appointments to sign the contract and to begin treatment at Connections was set for January 23, 1992.[7] On that date, the defendant was scheduled to arrive at approximately 3:45 p.m. to meet with Heitmann to sign the contract, and to begin the cognitive lab at 4:30 p.m. The defendant did not arrive at Connections until approximately 4:10 p.m., and claimed that he was late because he had been lost. Since the defendant missed his 3:45 appointment with Heitmann, he could not sign the contract. He was permitted, however, to take part in the cognitive lab on that date.

On January 23, 1992, Heitmann made an appointment for the defendant to sign the contract at the probation office in New Haven at 1 p.m. on January 29, 1992. She informed the defendant that if he did not sign the contract at that time, he would not be allowed into treatment. On January 29, 1992, the defendant met with his probation officer at 10 a.m. for his regular probation meeting. Heitmann was at the probation office

---

[6] This date was not included in the warrant for the defendant's arrest pursuant to General Statutes § 53a-32.

[7] This date, also, was not listed in the arrest warrant.

at that time and spoke briefly with the defendant. The defendant informed Heitmann that he had to be at work at 1 p.m., and requested that he be allowed to sign the contract at that time. Heitmann told the defendant that she had other appointments, that he could not then sign the contract, and that he would have to return at 1 p.m. The defendant failed to return to the probation office at 1 p.m., and never signed the contract.

On January 30, 1992, the defendant went to Connections to take part in the cognitive lab. Since the defendant had not signed the contract at the previously scheduled appointments, he was informed that he had been terminated from further treatment at Connections. Heitmann sent a letter to the probation department on February 7, 1992, informing the department of the defendant's status. At that time, the defendant had been on probation for over eight months.

On the basis of this evidence, the trial court found that the defendant had violated the special condition of his probation that he receive sex offender treatment, and ordered the defendant to serve four and one-half years. The defendant contends that there was insufficient evidence of a violation of the special condition of his probation, and that, even if a violation occurred, the trial court abused its discretion in revoking his probation. We disagree.

"A revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. If a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. *Black* v. *Romano,* [471 U.S. 606, 611, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985)]; *United States* v. *Czajak,* 909 F.2d 20, 22 (1st Cir. 1990)." *State* v. *Davis,*

29 Conn. App. 801, 805, 618 A.2d 557, cert. granted, 225 Conn. 918, 623 A.2d 1024 (1993) (certiorari limited to issue of standard of proof necessary to establish violation of probation); *State* v. *Scott,* 31 Conn. App. 660, 667, 626 A.2d 817 (1993). Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing. *State* v. *Davis,* supra.

I

A trial court initially makes a factual determination of whether a condition of probation has been violated. "In making its factual determination, the trial court is 'entitled to draw reasonable and logical inferences from the evidence.' *Payne* v. *Robinson,* [10 Conn. App. 395, 403, 523 A.2d 917 (1987).]" *State* v. *Davis,* supra, 811. Our review is limited to whether such a finding was clearly erroneous. Practice Book § 4061; *State* v. *Davis,* supra, 805. " 'A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .' " *Pollio* v. *Conservation Commission,* 32 Conn. App. 109, 115, 628 A.2d 20 (1993); see *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). "In making this determination, every reasonable presumption must be given in favor of the trial court's ruling. *State* v. *Amarillo,* 198 Conn. 285, 313–14, 503 A.2d 146 (1986)." *State* v. *Davis,* supra, 806; *State* v. *Scott,* supra, 668.

Pursuant to General Statutes § 53a-32 (b), a trial court cannot revoke probation unless a "violation is established by reliable and probative evidence." This court has determined that the standard of proof for a violation of a condition of probation is that of "reason-

able satisfaction." *State* v. *Davis,* supra, 809. In *Davis,* the court defined the standard as "a rational belief of a trial court that the evidence is adequate or sufficient to prove a violation." Id., 811.

The defendant completed two evaluations, but had not enrolled in the actual sex offender treatment program offered by Connections. The defendant missed appointments on January 15,[8] 16, 23,[9] and 29, to execute the papers necessary to take part in a treatment program at Connections, as well as an appointment on January 16 to begin the cognitive lab treatment. The defendant was then terminated from Connections and did not receive sex offender treatment. Under the evidence presented in this case, we conclude that the trial court could reasonably have found, by the standard of "reasonable satisfaction," that the defendant was in violation of the special condition of his probation that he receive sex offender treatment.[10]

---

[8] Although January 15, was not listed on the warrant as a date on which the defendant had missed an appointment, the court stated that it would "just consider [the date] as evidence of his intent, whether he intended to attend the other sessions that he missed."

[9] Defense counsel noted that this date was not mentioned in the warrant, but no further remarks were made concerning the propriety of the court in considering this date.

[10] The question of the proper standard of proof for finding a violation of a condition of probation will be reviewed by our Supreme Court. *State* v. *Davis,* 29 Conn. App. 801, 805, 618 A.2d 557, cert. granted, 225 Conn. 918, 623 A.2d 1024 (1993). This court has determined that the proper standard of proof for a violation of a condition of probation is that of "reasonable satisfaction." In his dissent from the majority opinion in that case, Judge Freedman expressed his belief that the "due process clauses of both the federal and state constitutions require nothing less than a finding that a violation of the conditions of probation must be established by, at least, a preponderance of the evidence." *State* v. *Davis,* supra, 816 (*Freedman, J.,* dissenting). Our Supreme Court has stated that the preponderance of the evidence test "means simply that 'the evidence must, when considered fairly and impartially, induce a reasonable belief that the fact in issue is true.' *Conley* v. *Board of Education,* 143 Conn. 488, 497, 123 A.2d 547 [1956]; *Beckwith* v. *Stratford,* 129 Conn. 506, 507, 29 A.2d 775 [1942]; *Darrow* v. *Fleischner,* 117 Conn. 518, 520, 169 A. 197 [1933]." *State* v. *Warren,* 169

## II

The defendant next contends that, even if a violation of his special condition of probation was established, the court should not have revoked his probation since the beneficial purposes of that probation were still being served. Our standard of review here is "whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. *State* v. *Roberson,* 165 Conn. 73, 80, 327 A.2d 556 (1973); *State* v. *Johnson,* 11 Conn. App. 251, 257, 527 A.2d 250 (1987)." *State* v. *Davis,* supra, 806. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *State* v. *Reddick,* 224 Conn. 445, 467, 619 A.2d 453 (1993).

"A revocation proceeding is held to determine whether the goals of rehabilitation thought to be served by probation have faltered, requiring an end to the conditional freedom obtained by a defendant at a sentencing that allowed him or her to serve less than a full sentence." *State* v. *Davis,* supra, 811. "The ultimate question in the probation process is 'whether the probationer is still a "good risk". . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public.' (Citations omitted.) *State* v. *Smith,* [207 Conn. 152, 177, 540 A.2d 679 (1988).]" *State* v. *Jacobs,*

Conn. 207, 213, 363 A.2d 91 (1975). On the basis of the evidence presented in this case, we also conclude that the trial court could reasonably have found, by the standard of preponderance of the evidence, that the defendant violated the special condition of his probation.

30 Conn. App. 340, 343, 620 A.2d 198, cert. granted on other grounds, 225 Conn. 920, 625 A.2d 822 (1993).

In this case, the special condition of the defendant's probation required that he receive sex offender treatment as part of an effort to prevent him from repeating the criminal conduct for which he had previously been convicted. The sex offender treatment was a key component of the rehabilitative process. The trial court reasonably could have found that, without the treatment, the likelihood of the defendant's again committing such crimes had not decreased, and that the goals of rehabilitation had faltered. We conclude, therefore, that the trial court did not abuse its discretion in revoking the defendant's probation and in imposing the suspended portion of the defendant's sentence.

The judgment is affirmed.

In this opinion the other judges concurred.