STATE OF CONNECTICUT *v.* PASQUALE VILLANO
(11515)

FOTI, SCHALLER and CRETELLA, Js.

Remanded May 12—decision released August 23, 1994

---

*Deborah DelPrete Sullivan,* assistant public defender, for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James Dinnan,* assistant state's attorney, for the appellee (state).

SCHALLER, J. This case is before us on remand from our Supreme Court. We previously considered the matter in *State* v. *Villano,* 33 Conn. App. 162, 634 A.2d 907 (1993), remanded for reconsideration, 229 Conn. 916, 642 A.2d 1212 (1994), in which we affirmed the judgment of the trial court revoking the defendant's probation.[1] The Supreme Court granted certification and remanded the case for reconsideration in light of its decision in *State* v. *Davis,* 229 Conn. 285, 303, 641 A.2d 370 (1994).

The defendant claims that the trial court (1) improperly found that the defendant had violated the special condition of his probation pursuant to General Statutes § 53a-32,[2] and (2) abused its discretion in revoking the

---

[1] The trial court imposed the four and one-half years suspended portion of a sentence that the defendant had received for his 1987 conviction of risk of injury to a child in violation of General Statutes § 53-21. General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[2] General Statutes § 53a-32 provides in pertinent part: "(a) At any time during the period of probation or conditional discharge, the court or any

defendant's probation.[3] We reverse the judgment of the trial court on the defendant's first claim and remand the case to the trial court for a new probation revocation hearing.[4]

The following facts are relevant to the appeal and were set forth in *State* v. *Villano,* supra, 33 Conn. App. 162. "On May 28, 1987, the defendant pleaded guilty under the *Alford*[5] doctrine to the charge of risk of injury to a child, and, on May 29, 1987, the court sentenced the defendant to ten years in prison, suspended after five and one-half years, with five years probation. The defendant began his probationary period on May 29, 1991. On that date, the defendant and his probation officer signed a form titled 'Conditions of Probation.' This document outlined the standard conditions of the

judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge . . . . Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. . . .

"(b) If such violation is established, the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

[3] The defendant also requests that we reconsider our decision in *State* v. *Baxter,* 19 Conn. App. 304, 563 A.2d 721 (1989). In that case, we determined that there is no constitutional requirement that the trial court must find that a violation of probation was willful, except in the limited circumstances set forth in *Bearden* v. *Georgia,* 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983) (where indigent defendant fails to pay fine or restitution, willful disobeyance of condition of probation must be shown). We maintain our position set forth in *Villano* to decline to reconsider our decision in *Baxter.*

[4] Because we reverse the trial court's judgment on the defendant's first claim, we need not reach the defendant's second claim, as it is unlikely to recur upon retrial.

[5] *North Carolina* v. *Alford,* 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

defendant's probation, and also listed as a special condition the defendant's participation in a sex offender treatment program.

"His probation officer then referred the defendant on May 31, 1991, to special services at The Connection Agency, Inc. (Connections), an organization in Middletown that offers treatment for sexual behavior problems. Lisa Heitmann, a treatment specialist at Connections, completed an evaluation of the defendant in July, 1991, which resulted in Heitmann's recommendation that the defendant initially take part in the 'cognitive lab,' a twelve week psycho-educational program that would prepare the defendant for group therapy.

"In February, 1992, the probation officer caused a warrant to be issued for the defendant's arrest pursuant to General Statutes § 53a-32, alleging that the defendant had violated the condition of his probation that he receive sex offender treatment. The warrant detailed the defendant's probation history and alleged specifically that the defendant failed to report to Connections on January 16, 1992, and failed to meet with Heitmann on January 29, 1992, in order to discuss his treatment plan and to sign the papers necessary for him to take part in the treatment program. The warrant also stated that Connections discharged the defendant from its treatment program due to 'noncompliance and avoidance of treatment.'

"At the probation revocation hearing, the probation officer, Heitmann and the defendant testified. The following evidence was presented. Connections scheduled the defendant to begin the cognitive lab in August, 1991, but the defendant then asked his probation officer to allow him to seek a second evaluation through Catholic Family Services. The defendant testified on cross-examination that he sought the second opinion

because he and Heitmann 'were [not] clicking too well.' The probation officer agreed to the second opinion, despite her awareness that, although Catholic Family Services had the capacity to evaluate the defendant, it did not have a program for the treatment of sex offenders. The defendant participated in the evaluation at Catholic Family Services from August until December, 1991.[6]

"Since Catholic Family Services could not treat the defendant as a sex offender, he was referred again to Connections. In order for the defendant to begin actual treatment at Connections, he had to sign a contract with that agency. Connections originally scheduled the defendant for an appointment at the New Haven probation office on January 15, 1992, in order to sign the contract. The defendant did not appear for this appointment.[7] Connections then scheduled the defendant to sign the contract and to begin the cognitive lab treatment at Connections on January 16, 1992. The defendant twice called Heitmann on January 16 and told her that he was unable to obtain transportation from his home in New Haven to Connections in Middletown. The defendant did not sign the contract or attend the cognitive lab on that date.

"A pair of appointments to sign the contract and to begin treatment at Connections was set for January 23, 1992.[8] On that date, the defendant was scheduled to

---

[6] "During this period, the defendant did not attend any programs at Connections. The probation officer testified that she did not expect the defendant to attend any programs at Connections until the defendant completed the Catholic Family Services evaluation. Personnel at Connections apparently believed that the defendant would continue treatment at Connections, and when the defendant did not appear, Connections terminated the defendant from its program. At the request of the probation officer, however, the defendant was reinstated." *State* v. *Villano,* supra, 33 Conn. App. 165 n.5.

[7] "This date was not included in the warrant for the defendant's arrest pursuant to General Statutes § 53a-32." *State* v. *Villano,* supra, 33 Conn. App. 166 n.6.

[8] "This date, also, was not listed in the arrest warrant." *State* v. *Villano,* supra, 33 Conn. App. 166 n.7.

arrive at approximately 3:45 p.m. to meet with Heit-mann to sign the contract, and to begin the cognitive lab at 4:30 p.m. The defendant did not arrive at Connections until approximately 4:10 p.m., and claimed that he was late because he had been lost. Since the defendant missed his 3:45 appointment with Heitmann, he could not sign the contract. He was permitted, however, to take part in the cognitive lab on that date.

"On January 23, 1992, Heitmann made an appointment for the defendant to sign the contract at the probation office in New Haven at 1 p.m. on January 29, 1992. She informed the defendant that if he did not sign the contract at that time, he would not be allowed into treatment. On January 29, 1992, the defendant met with his probation officer at 10 a.m. for his regular probation meeting. Heitmann was at the probation office at that time and spoke briefly with the defendant. The defendant informed Heitmann that he had to be at work at 1 p.m., and requested that he be allowed to sign the contract at that time. Heitmann told the defendant that she had other appointments, that he could not then sign the contract, and that he would have to return at 1 p.m. The defendant failed to return to the probation office at 1 p.m., and never signed the contract.

"On January 30, 1992, the defendant went to Connections to take part in the cognitive lab. Since the defendant had not signed the contract at the previously scheduled appointments, he was informed that he had been terminated from further treatment at Connections. Heitmann sent a letter to the probation department on February 7, 1992, informing the department of the defendant's status. At that time, the defendant had been on probation for over eight months.

"On the basis of this evidence, the trial court found that the defendant had violated the special condition of his probation that he receive sex offender treatment,

and ordered the defendant to serve four and one-half years." *State* v. *Villano,* supra, 33 Conn. App. 164–67. The trial court did not state the standard of proof under which it found that the defendant had violated his probation. The trial court stated at various points that it had "plenty of facts," that the defendant is "in direct violation of a Judge's order that he be in treatment," that its "analysis leads . . . to the conclusion that this is an intentional, willful course of conduct, designed to avoid entry into treatment" and that "the defendant is found to be in violation of his probation."

We must first review whether the trial court applied the proper standard of proof to the evidence presented at the probation revocation hearing in finding that the defendant had violated the special condition of his probation. At the time of our previous opinion, the standard of proof for revocation of probation had been set forth as that of reasonable satisfaction. *State* v. *Davis,* 29 Conn. App. 801, 809, 618 A.2d 557, rev'd, 229 Conn. 285, 641 A.2d 370 (1994). In the present case, we originally held that "[u]nder the evidence presented in this case, we conclude that the trial court could reasonably have found, by the standard of 'reasonable satisfaction,' that the defendant was in violation of the special condition of his probation that he receive sex offender treatment." *State* v. *Villano,* supra, 33 Conn. App. 169.

In *State* v. *Davis,* supra, 229 Conn. 302, our Supreme Court concluded that the proper standard of proof in a revocation of probation proceeding is that of a fair preponderance of the evidence. After noting that a probation revocation proceeding is civil in nature, the court stated that "[o]rdinarily, in a civil case, we assume that a trial court has applied the fair preponderance of the evidence standard when it has failed to indicate the standard applied. *In re Juvenile Appeal (83-AB),* 189 Conn. 58, 59, 454 A.2d 271 (1983). Nevertheless, because the trial court articulated a standard of 'appro-

priate evidence,' we are uncertain as to the standard of proof applied by that court. This is particularly so because of the dicta in our prior decisions referring to the 'reasonable satisfaction' standard." *State* v. *Davis,* supra, 229 Conn. 302–303; see *State* v. *Smith,* 207 Conn. 152, 167, 540 A.2d 679 (1988); *State* v. *Roberson,* 165 Conn. 73, 80, 327 A.2d 556 (1973); see also *State* v. *Johnson,* 11 Conn. App. 251, 258, 527 A.2d 250 (1987); *Payne* v. *Robinson,* 10 Conn. App. 395, 403, 523 A.2d 917 (1987), aff'd, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988).

Here, although the court stated that it had "plenty of facts" from which it could determine that the defendant had violated his probation, we remain uncertain as to the actual standard of proof applied by the trial court in making its determination. In accord with our Supreme Court in *Davis,* we must remand this case to the trial court "for a determination of whether the state can prove by a fair preponderance of the evidence that the defendant violated a condition of his probation." Id., 303.

The judgment is reversed and the case is remanded for a new probation revocation hearing.

In this opinion the other judges concurred.