## STATE OF CONNECTICUT *v.* HAROLD HILL
### (SC 16370)

Borden, Katz, Palmer, Sullivan and Vertefeuille, Js.*

Argued January 9—officially released June 12, 2001

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

*Dennis P. Harrigan*, assistant public defender, with whom, on the brief, were *Robert M. Berke*, assistant public defender, and *Eric J. Tinsley*, certified legal intern, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Kevin Dunn*, assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The issue presented in this case is whether the trial court properly found that the defendant, Harold Hill, had violated his probation and that his probation should be revoked, when the defendant claims that the violation was not wilful. The defendant argues that a probation violation must be wilful in order for the trial court to revoke probation. The state argues that there is no such wilfulness requirement, and that, in any event, the defendant's probation violation was wilful. We agree with the state that the defendant's conduct need not be wilful in order to constitute a probation violation. Accordingly, we affirm the judgment of the trial court.

The record reveals the following relevant facts. The defendant was charged with assault in the third degree in violation of General Statutes § 53a-61,[1] in connection

---

[1] General Statutes § 53a-61 provides: "(a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon.

"(b) Assault in the third degree is a class A misdemeanor and any person found guilty under subdivision (3) of subsection (a) of this section shall be sentenced to a term of imprisonment of one year which may not be suspended or reduced."

with a 1996 assault on his wife, Eileen Hill. The defendant and the state subsequently entered into a plea agreement whereby the state agreed to drop the assault charge, and the defendant pleaded guilty to a charge of failure to appear in the second degree in violation of General Statutes § 53a-173.[2] The trial court sentenced the defendant to one year imprisonment, execution suspended, and eighteen months probation. As a special condition of probation, the court ordered that the defendant engage in no violence toward his wife.

In January, 1998, while still on probation, the defendant again assaulted his wife. As a result, he was charged with assault in the third degree and was incarcerated from January 9, 1998, to March 4, 1998. On March 4, 1998, the defendant pleaded guilty to the assault charges and to an additional charge of failure to appear in the second degree. The trial court terminated the defendant's probation on the 1996 charge and sentenced the defendant to two years imprisonment, execution suspended, and three years probation. As a special condition of probation, the court ordered that the defendant attend periodic meetings at an Alternative to Incarceration Center (center).

The defendant failed to attend several of the scheduled meetings, and his probation officer, Hilda Castillo, filed a motion for violation of probation and an application for an arrest warrant pursuant to General Statutes (Rev. to 1997) § 53a-32, as amended by Public Acts 1998,

---

[2] General Statutes § 53a-173 provides: "(a) A person is guilty of failure to appear in the second degree when (1) while charged with the commission of a misdemeanor or a motor vehicle violation for which a sentence to a term of imprisonment may be imposed and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear, or (2) while on probation for conviction of a misdemeanor or motor vehicle violation, he wilfully fails to appear when legally called for a violation of probation hearing.

"(b) Failure to appear in the second degree is a class A misdemeanor."

No. 98-130.[3] On November 13, 1998, the trial court held

[3] General Statutes (Rev. to 1997) § 53a-32, as amended by Public Acts 1998, No. 98-130, provides: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. Whenever a sexual offender, as defined in section 54-102s, has violated the conditions of his probation by failing to notify his probation officer of any change of his residence address, as required by said section, such probation officer may notify any police officer that such person has, in his judgment, violated the conditions of his probation and such notice shall be sufficient warrant for the police officer to arrest such person and return him to the custody of the court or to any suitable detention facility designated by the court. Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. Such written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. After making such an arrest, such probation officer shall present to the detaining authorities a similar statement of the circumstances of violation. Provisions regarding release on bail of persons charged with a crime shall be applicable to any defendant arrested under the provisions of this section. Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended

an evidentiary hearing on the motion. At the violation phase of the hearing, Castillo and Jessie McCollough, a case manager for the Bridgeport center, testified for the state.

McCollough testified that he had been appointed as the defendant's case manager on March 5, 1998. On March 6, McCollough conducted an orientation with the defendant, at which time he advised the defendant of the conditions for participation in the program. Among other things, McCollough advised the defendant of his reporting schedule, which required him to report to the center on March 4, 5, 6, 10, 11, 12, 17, 18 and 19, 1998. McCollough also told the defendant that he must provide McCollough with a verification of employment and a urine sample.

McCollough testified that, after attending the March 6, 1998 meeting, the defendant failed to report to his next meeting on March 10, 1998. The defendant attended the next meeting on March 11, but failed to report to the next four meetings on March 12, 17, 18 and 19. In all, the defendant missed five out of his nine scheduled meetings. The defendant also failed to provide a urine sample or verification of employment. McCollough further testified that he had tried to modify the defendant's reporting schedule to accommodate his employment requirements, but that he told the defendant that attendance at the meetings was a condition of his probation, "and if he didn't have that condition he would be in jail and he wouldn't have [a] job."

Finally, McCollough testified that the center provides programs for anger management, domestic violence,

entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

conflict resolution, substance abuse and continuing education. He was not able to determine what treatment program would be appropriate for the defendant, however, because the defendant failed to attend the meetings at the center.

Castillo testified at the hearing that she had spoken with the defendant by telephone, and that the defendant had told her that his work schedule made it difficult for him to attend the center meetings.

The defendant also testified at the hearing. He admitted that he had missed the meetings. He claimed, however, that his job, which he had held for more than one and one-half years at the time of the hearing, required him to work six days a week and to travel from Massachusetts to Philadelphia, making it difficult for him to attend the meetings. He testified that he had met with a public defender, Dennis Harrigan, who had advised him to talk to Castillo about modifying the schedule. He had done so, and both Castillo and McCollough had told him that they would try to work something out.

Relying on the testimony given at the hearing, the trial court concluded that the defendant had violated the special condition of his probation by failing to report to the scheduled meetings. The court then conducted a sentencing phase hearing to determine whether the defendant's probation should be revoked.

Castillo testified at the sentencing phase hearing that, in her opinion, the defendant was not amenable to probation. Specifically, she stated that he was uncooperative and resistant; that he had an extensive criminal record, including prior convictions for assault, violations of probation, sale of narcotics, carrying a pistol without a permit, failure to appear, possession of narcotics, burglary and larceny; and that he had failed to meet the conditions of his current probation. In addition, Castillo testified that she had received a report

that the defendant had assaulted his wife again, in September, 1998.[4]

On the basis of this testimony, the trial court found that the defendant had violated his probation and ordered it revoked. The court further rendered judgment that the original sentence of two years imprisonment be carried out. The defendant appealed from the judgment to the Appellate Court, and we granted the defendant's motion to transfer the appeal to this court pursuant to Practice Book § 65-2.[5] At oral argument before this court, the parties requested that they be allowed to file supplemental briefs on the question of whether a probation violation must be wilful. This court granted the request and ordered supplemental briefs on the following questions: "In a revocation of probation proceeding under General Statutes § 53a-32, must the state prove that the violation was 'wilful?' If so, what is the definition of 'wilful' in this context?"

I

The defendant claims that the trial court improperly revoked his probation because his failure to attend the meetings at the center was not wilful, but resulted from his need to perform his job. He further claimed, for the first time at oral argument before this court, that he believed that failing to perform his job and thereby

___

[4] The defendant initially claimed in his brief that the trial court improperly admitted this hearsay testimony concerning the alleged assault on the defendant's wife. The defendant abandoned this claim at oral argument before this court.

[5] Practice Book § 65-2 provides in relevant part: "After the filing of an appeal in the appellate court, but in no event after the case has been assigned for hearing, any party may move for transfer to the supreme court. The motion, addressed to the supreme court, shall specify, in accordance with provisions of Section 66-2, the reasons why the party believes that the supreme court should hear the appeal directly. A copy of the memorandum of decision of the trial court, if any, shall be attached to the motion. The filing of a motion for transfer shall not stay proceedings in the appellate court. . . ."

risking the loss of his job, itself, would have been a violation of probation. We are not persuaded.

Whether wilfulness is an element of § 53a-32 is a matter of statutory interpretation. "Statutory interpretation is a matter of law over which this court's review is plenary. . . . In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 84, 743 A.2d 156 (1999).

"When the commission of an offense defined in [the Penal Code], or some element of an offense, requires a particular mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms 'intentionally', 'knowingly', 'recklessly' or 'criminal negligence', or by use of terms, such as 'with intent to defraud' and 'knowing it to be false', describing a specific kind of intent or knowledge. . . ." General Statutes § 53a-5; see also *State* v. *Denby*, 235 Conn. 477, 482, 668 A.2d 682 (1995) ("[o]rdinarily, the mental state required by a statute is expressly designated"). Generally, the absence of any such requirement demonstrates that the legislature did not intend to make it an element of the crime. See id. (absence of requirement that defendant knowingly sold narcotics within prohibited school zone demonstrates that legislature did not intend to make knowledge element of crime).

Although the legislature has made wilfulness an element of certain crimes; see, e.g., General Statutes § 53a-

172;[6] General Statutes § 53-21;[7] it is not expressly required under § 53a-32. Accordingly, the language of the statute demonstrates that the legislature did not intend to make wilfulness an element of a probation violation. See *State* v. *Denby,* supra, 235 Conn. 482.

Furthermore, we can perceive no public policy that would be served by such a requirement. If a defendant is unable to comply strictly with the conditions of probation, even for reasons beyond his control, the legislative policies underlying conditional probation, namely, " 'to foster the offender's reformation and to preserve the public's safety' "; *State* v. *Pieger,* 240 Conn. 639, 647, 692 A.2d 1273 (1997); should not require that noncompliance must be excused as a matter of law. These policies only suggest that, in such a case, the determination of

[6] General Statutes § 53a-172 provides: "(a) A person is guilty of failure to appear in the first degree when (1) while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear, or (2) while on probation for conviction of a felony, he wilfully fails to appear when legally called for a violation of probation hearing.

"(b) Failure to appear in the first degree is a class D felony."

[7] General Statutes § 53-21 provides: "(a) Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, or (3) permanently transfers the legal or physical custody of a child under the age of sixteen years to another person for money or other valuable consideration or acquires or receives the legal or physical custody of a child under the age of sixteen years from another person upon payment of money or other valuable consideration to such other person or a third person, except in connection with an adoption proceeding that complies with the provisions of chapter 803, shall be guilty of a class C felony.

"(b) The act of a parent or agent leaving an infant thirty days or younger with a designated employee pursuant to section 17a-58 shall not constitute a violation of this section."

whether to find a violation and, if found, whether to impose any portion of the suspended sentence, should be left to the discretion of the trial court. For example, if an alcoholic defendant is convicted of driving while under the influence, and the trial court imposes probation with a no-drinking condition, the defendant's inability to comply with the condition should not automatically excuse noncompliance. Rather, protection of the public's safety may require that the probation be revoked.

The defendant argues, however, that under *Bearden* v. *Georgia*, 461 U.S. 660, 668–69, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983), if the probationer has made all reasonable efforts to comply with the conditions of probation, and yet cannot do so through no fault of his own, "it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available." In *Bearden*, the United States Supreme Court held that to revoke probation on the grounds that the probationer had failed to pay a fine, without inquiring into whether that failure was wilful, violated the fourteenth amendment. Id., 672–73. That holding, however, was grounded on the court's sensitivity to the treatment of indigents in the criminal justice system and its recognition of the due process and equal protection concerns that the indigence of a defendant raises. Id., 664–67. No such concern is present in this case and, accordingly, *Bearden* is not controlling. See id., 668 n.9 ("[w]e do not suggest that, in other contexts, the probationer's lack of fault in violating a term of probation would necessarily prevent a court from revoking probation"); see also *State* v. *Bostwick*, 52 Conn. App. 557, 564, 728 A.2d 10, appeal dismissed, 251 Conn. 117, 740 A.2d 381 (1999) (" 'there is [generally] no constitutional requirement . . . that the trial court must first find that the violation was wilful, before probation may be

revoked' "); *State* v. *Baxter*, 19 Conn. App. 304, 320, 563 A.2d 721 (1989) (same).

Nor are we persuaded by the cases from other jurisdictions cited by the defendant. The court in *State* v. *Alves*, 174 Ariz. 504, 506, 851 P.2d 129 (App. 1993), held that a violation must be wilful before probation may be revoked. The court in that case relied on *State* v. *Robinson*, 142 Ariz. 296, 297–98, 689 P.2d 555 (App. 1984), in which the court had held that a revocation of probation based solely on a failure to pay fines was unconstitutional under *Bearden* v. *Georgia*, supra, 461 U.S. 660. Similarly, in *State* v. *Lafferty*, 125 Idaho 378, 382, 870 P.2d 1337 (App. 1994), the court relied on *Bearden* to hold that any violation of probation must be wilful before probation may be revoked. We already have concluded, however, that *Bearden* is inapplicable to the circumstances of this case.

The defendant also cites several Florida cases in which the court held that a violation must be wilful before probation may be revoked. See *Williams* v. *State*, 728 So. 2d 287, 288 (Fla. App. 1999); *Garcia* v. *State*, 701 So. 2d 607, 608 (Fla. App. 1997); *Sanders* v. *State*, 675 So. 2d 665, 665–66 (Fla. App. 1996); *Harris* v. *State*, 610 So. 2d 36, 37 (Fla. App. 1992); *Donneil* v. *State*, 377 So. 2d 805 (Fla. App. 1979). The holding of those cases, however, ultimately can be traced to Florida cases holding that probation may not be revoked because of the probationer's indigent status. See, e.g., *Coxon* v. *Florida*, 365 So. 2d 1067, 1068 (Fla. App. 1979). Accordingly, for the same reasons that we are not persuaded by those cases relying on *Bearden*, we are not persuaded by these cases.

The defendant also cites a number of cases in which the court found that the nonwilful character of the defendant's conduct rendered the probation violation excusable and that revocation therefore was improper.

See *State* v. *Nakamura*, 59 Haw. 378, 380–83, 581 P.2d 759 (1978) (state statute provided that failure to comply with conditions of probation must be inexcusable; arbitrary rejection of probationer by halfway house was not inexcusable and did not warrant revoking probation); *State* v. *Moretti*, 50 N.J. Super. 223, 243, 141 A.2d 810 (1958) (hospitalization for psychiatric treatment was lawful excuse for violation of condition that probationer obtain employment); *State* v. *Hill*, 132 N.C. App. 209, 213, 510 S.E.2d 413 (1999) (court remanded case to trial court for determination of whether illness was lawful excuse for failure to perform probation condition of community service); *State* v. *Austin*, 165 Vt. 389, 398, 685 A.2d 1076 (1996) (burden was on defendant to show that failure to comply with conditions of probation was not wilful, but resulted from factors beyond his control). These cases do not support the defendant's argument that wilfulness is an element of the offense of violation of probation, however. Rather, they show that a probationer may have an affirmative defense of excuse if compliance with the condition was impossible.

The defendant also relies on several cases in which the court held that, when the violation resulted from circumstances beyond the defendant's control, or if the condition was impossible to comply with, probation may not be revoked.[8] See *State* v. *Oyler*, 92 Idaho 43, 47, 436 P.2d 709 (1968) (remanding case to trial court for determination of whether no-drinking condition was impossible for alcoholic to meet, and, if so, whether condition should be revoked or, instead, protection of public safety required probation to be revoked); *Smith* v. *State*, 306 Md. 1, 7, 506 A.2d 1165 (1986) (relying on *Humphrey* v. *State*, 240 Md. 164, 167–68, 428 A.2d 440

---

[8] These cases are distinguishable from the cases cited in the preceding paragraph because the court in these cases did not explicitly place the burden of proving the existence of a lawful excuse on the defendant. Thus, they may be read as requiring the state to prove wilfulness.

[1981], for proposition that violation must be wilful for probation to be revoked); *Humphrey* v. *State*, supra, 169 (court found insufficient evidence that probationer did not comply with condition of probation when he was prevented from complying by factors beyond his control); *State* v. *Martinez*, 108 N.M. 604, 606–607, 775 P.2d 1321, cert. denied, 108 N.M. 624, 776 P.2d 846 (1989) (relying on *Humphrey* v. *State*, supra, 167–68, for proposition that, if violation of probation is not wilful, but resulted from factors beyond probationer's control, probation may not be revoked); *People* v. *Bowman*, 73 App. Div. 2d 921, 922, 423 N.Y.S.2d 242 (1980) (when defendant tried in good faith to find hospital willing to provide psychiatric treatment as required by condition of probation, but was unable to do so, condition of probation was not violated).

To the extent that these cases suggest that the burden is on the state to prove the wilfulness of a violation of probation, we are not persuaded. First, as previously noted, Connecticut's statute has no such express requirement. Second, as suggested by *State* v. *Oyler*, supra, 92 Idaho 47, and as we already have concluded, if a defendant is unable to comply strictly with the conditions of probation, even for reasons beyond his control, the legislative policies underlying conditional probation should not automatically require that compliance should be excused as a matter of law.

Accordingly, we conclude that wilfulness is not an element of a probation violation under § 53a-32. Rather, to establish a violation, the state needs only to establish that the probationer knew of the condition and engaged in conduct that violated the condition.

## II

Having concluded that wilfulness is not an element of a violation of probation, we now address the question of whether the trial court in this case properly found

that the defendant knew of the condition and engaged in conduct that violated it, and that his probation should therefore be revoked.

" 'A revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. If a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. *Black* v. *Romano*, [471 U.S. 606, 611, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985)]; *United States* v. *Czajak*, 909 F.2d 20, 22 (1st Cir. 1990).' *State* v. *Davis*, 29 Conn. App. 801, 805, 618 A.2d 557, cert. granted, 225 Conn. 918, 623 A.2d 1024 (1993) (certiorari limited to issue of standard of proof necessary to establish violation of probation) [rev'd on other grounds, 229 Conn. 285, 641 A.2d 370 (1994)]; *State* v. *Scott*, 31 Conn. App. 660, 667, 626 A.2d 817 (1993). Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing." *State* v. *Villano*, 33 Conn. App. 162, 167–68, 634 A.2d 907 (1993), cert. granted, remanded for reconsideration, 229 Conn. 916, 642 A.2d 1212, rev'd on other grounds, 35 Conn. App. 520, 646 A.2d 915 (1994).

"A trial court initially makes a factual determination of whether a condition of probation has been violated. In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption

must be given in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) Id., 168.

The standard of review of the trial court's decision at the sentencing phase of the revocation of probation hearing is "whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) Id., 170.

In this case, the evidence presented at the factual phase of the probation revocation hearing clearly established that the defendant knew of the condition that he attend the meetings at the center, and that he chose not to attend those meetings so that he could perform his job.[9] Because the defendant knew of the condition and engaged in conduct that violated it, we conclude that the trial court properly found that the condition had been violated.

Although we have concluded that wilfulness is not an element of the offense of violation of probation, the trial court may consider the nonwilfulness of the probationer's conduct or other mitigating factors at the sentencing phase of the revocation of probation hearing. Accordingly, we now consider whether the trial court abused its discretion by revoking the defendant's probation under the circumstances of this case.

We previously have recognized that "[t]o a greater or lesser degree, it is always true of probationers . . .

---

[9] We note that the defendant never provided verification of employment to his case manager at the center, as had been requested. We assume for the purposes of this opinion, however, that the defendant actually was employed.

that they do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions. . . . These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." (Internal quotation marks omitted.) *State* v. *Misiorski,* 250 Conn. 280, 288, 738 A.2d 595 (1999).

"A revocation proceeding is held to determine whether the goals of rehabilitation thought to be served by probation have faltered, requiring an end to the conditional freedom obtained by a defendant at a sentencing that allowed him or her to serve less than a full sentence." *State* v. *Davis,* supra, 29 Conn. App. 811. "[T]he ultimate question [in the probation process is] whether the probationer is still a 'good risk' . . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public." (Citations omitted.) *State* v. *Smith,* 207 Conn. 152, 177, 540 A.2d 679 (1988).

The defendant argues that, even if he had violated the condition that he attend the meetings at the center, that violation should have been excused because he was faced with the difficult choice of either attending the meetings and jeopardizing his job, or performing his job and missing the meetings.[10] We are not per-

---

[10] The defendant also claimed, for the first time at oral argument before this court, that he believed that his failure to perform his job, itself, would have been grounds for revoking his probation. The proper time to make this factual claim, however, was at the revocation hearing. Although the defendant did testify at that hearing that it was his understanding that he had been released on probation for the purpose of allowing him to work, he did not indicate that he believed that his failure to do so to the extent required to comply with the explicit conditions of his probation would, itself, be a probation violation. Accordingly, we decline to consider whether such a belief would excuse noncompliance with the conditions of probation.

suaded. We first note that the defendant was incarcerated from January 9, 1998, to March 4, 1998, when he was released on probation. The defendant testified at the November 13, 1998 probation revocation hearing that he had, at the time of the hearing, worked for his employer for more than one and one-half years. It is difficult to see how the defendant, who had not lost his job during the two months that he was incarcerated, reasonably could have feared that he would lose his job if he attended the meetings at the center during the two weeks following his release on probation.

Even if the defendant did have such a concern, however, the choice to perform his job rather than to attend the scheduled meetings simply was not the defendant's to make. While on probation, he "[did] not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions." (Internal quotation marks omitted.) *State* v. *Misiorski*, supra, 250 Conn. 288. Although, as a general rule, it is desirable for probationers to be gainfully employed and to support their families, the trial court reasonably could have found that it was more important for this defendant, who had multiple convictions arising out of assaults on his wife, to attend the meetings at the center and to take part in the center's treatment programs. When the defendant chose not to do so, the court reasonably could have concluded that the defendant was no longer a " 'good risk' " because his conduct was "inimicable to his own rehabilitation, as well as to the safety of the public"; *State* v. *Smith*, supra, 207 Conn. 177; in particular, to the safety of his own family. Accordingly, we conclude that the trial court did not abuse its discretion in revoking the defendant's probation.

The judgment is affirmed.

In this opinion the other justices concurred.