STATE OF CONNECTICUT *v.* SCOTT CROSBY
(AC 31462)

Bishop, Beach and Flynn, Js.

Argued October 21, 2010—officially released January 4, 2011

*Frank P. Cannatelli*, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Mitchell Rubin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Scott Crosby, appeals from the judgment of the trial court revoking his probation and sentencing him to eight months incarceration. On appeal, the defendant claims that the court (1) abused its discretion by revoking his probation and (2) erred

by denying his motion for a bond pending appeal.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On January 4, 2008, the defendant was charged with violating conditions of two of his probations, which were imposed as parts of several sentences, in violation of General Statutes § 53a-32. It is uncontested that he violated conditions of probation, previously imposed in connection with criminal convictions, including conditions prohibiting contact with Metro-North Commuter Rail, unless authorized by a probation officer.[2] The court held a violation of probation hearing on June 25, 2009, which is the subject of this appeal.

During the adjudicatory phase of the hearing, the state presented evidence establishing that the defendant had violated conditions of his probation. John Gordon, the defendant's probation officer, testified that the defendant was not living where he had indicated he would live, that he had left Connecticut without permission and that he had been on Metro-North property,[3]

---

[1] In his brief, the defendant also claimed that the court erred by not holding his violation of probation hearing within 120 days of his arraignment as required by General Statutes § 53a-32 (c). At oral argument, however, the defendant waived this claim, conceding that it was not adequately briefed.

[2] In addition to the standard provisions of probation, the defendant's probation contained the following special conditions: (1) stay off Metro-North property unless authorized by probation officer; (2) do not call Metro-North; (3) substance abuse evaluation and treatment; (4) psychiatric evaluation and treatment; and (5) take prescribed medications.

The special conditions relating to Metro-North were imposed because of the defendant's obsessive behavior regarding it. The defendant had made several harassing telephone calls to Metro-North employees, had frequented Metro-North property, attended Metro-North staff meetings and had also been seen around the home of the chairman of the Connecticut Rail Commuter Council.

[3] On December 28, 2007, Gordon, the defendant's probation officer, issued the defendant a travel permit that authorized him to travel to New York City on December 31, 2007, and to return on the same date, via Amtrak or Metro-North, for the limited purpose of receiving medical treatment. On January 2, 2008, Jennifer Kearney, a probation officer who was familiar

all of which constituted violations of conditions of his probation. Gordon also testified that he considered the defendant to be a "high risk client" who "might actually do something dangerous." At the conclusion of the adjudicatory phase, at which time defense counsel admitted that the defendant had violated conditions of his probation, the court determined that the defendant had committed "at least one or more violations of probation."

The court then proceeded to the dispositional phase of the hearing. During this phase, Gordon testified that he worked with probationers who had mental health issues and, in his opinion, the defendant had an "obsessive nature" regarding Metro-North that caused Gordon to be "worried about other people . . . ." He further stated that this was the defendant's third violation of probation, that he "hasn't followed any of the conditions of probation" and that the defendant was "very manipulative . . . ." Gordon also stated that he did not believe that a further period of probation could help the defendant. The state agreed and argued that the beneficial aspects of probation were no longer being served. The state supported this contention by highlighting the defendant's lengthy criminal record in Connecticut and New York, which included five convictions for criminal trespass, three convictions for breach of the peace, two convictions for driving while under the influence, one conviction for harassment and three convictions for violation of probation. The defendant argued that his medical and psychiatric conditions rendered him incapable of complying with the terms of his probation.

Upon the conclusion of the hearing, the court determined that because of its "findings that there was a violation of the terms and conditions of probation, and

with Gordon and the defendant, saw the defendant on a Metro-North train traveling from Connecticut to New York. She informed Gordon of this fact the following day, and Gordon confirmed that the defendant was traveling on the Metro-North train without permission.

the repeated history of violations and repeated offenses by the defendant, it does not appear that further probation would be well served." Accordingly, the court sentenced the defendant to a total effective term of eight months incarceration.[4]

On July 1, 2009, the defendant filed a motion for reconsideration of his sentence and credit for time served, and on August 21, 2009, filed a motion for a bond pending appeal. On August 24, 2009, the court held a hearing in which it denied the defendant's motion for reconsideration. At the same hearing, the court also denied the defendant's motion for a bond pending appeal on the ground that there was no appeal pending at that time.[5] This appeal followed.

I

The defendant first claims that the court abused its discretion by revoking his probation and sentencing him to eight months incarceration. Specifically, the defendant argues that his probation should not have been revoked because psychiatric and medical needs rendered him unable to conform to the conditions of his probation and, therefore, no beneficial purposes would be served by incarceration. We disagree.

We begin by setting forth our standard of review. "Our Supreme Court has recognized that revocation of probation hearings, pursuant to § 53a-32, [comprise] two distinct phases, each with a distinct purpose. . . . In the evidentiary phase, [a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . In

---

[4] Because the court determined that the defendant violated conditions of both of his probations, the court sentenced him to four months incarceration for each violation, to be served consecutively, for a total effective sentence of eight months incarceration.

[5] There is also nothing in the record to suggest that defense counsel had given the court notice of his intent to appeal.

the dispositional phase, [i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. . . . [T]he ultimate question [in this phase is] whether the probationer is still a good risk . . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public." (Citation omitted; internal quotation marks omitted.) *State* v. *Barnes*, 116 Conn. App. 76, 80–81, 974 A.2d 815, cert. denied, 293 Conn. 925, 980 A.2d 913 (2009).

"The standard of review of the trial court's decision at the sentencing phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 185–86, 842 A.2d 567 (2004).

Our review of the record reveals that the court did not abuse its discretion by revoking the defendant's probation. Gordon testified that the defendant "[hadn't] followed any of the conditions of [his] probation" and that this was, in fact, the defendant's third violation of probation. Gordon also testified that the defendant's obsessive nature regarding Metro-North led him to believe that the defendant was a risk to the public and that "probation [had] been exhausted in his case." Additionally, the defendant's record is replete with criminal offenses, some of which suggested that he may have posed a risk to the public. As a result, the court determined that because of "the repeated history of

violations and repeated offenses by the defendant, it does not appear that further probation would be well served." We are convinced that the court's determination that the beneficial aspects of probation were no longer being served was supported by the record.

The defendant's argument that his medical and psychiatric needs rendered him incapable of complying with the terms of his probation is unpersuasive. It is well established that "[i]f a defendant is unable to comply strictly with the conditions of probation, even for reasons beyond his control, the legislative policies underlying conditional probation, namely, to foster the offender's reformation and to preserve the public's safety . . . should not require that noncompliance must be excused as a matter of law. These policies only suggest that, in such a case, the determination of whether to find a violation and, if found, whether to impose any portion of the suspended sentence, should be left to the discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *State* v. *Hill*, 256 Conn. 412, 420–21, 773 A.2d 931 (2001). Accordingly, on the basis of the record before us, we conclude that the court did not abuse its discretion by revoking the defendant's probation and sentencing him to eight months incarceration.

## II

The defendant finally claims that the court erred when it denied his motion for a bond pending appeal. We dismiss this aspect of the appeal.

It is axiomatic that the exclusive method to challenge an order pertaining to bail is to file a petition for review with this court pursuant to General Statutes § 54-63g.[6]

[6] General Statutes § 54-63g provides: "Any accused person or the state, aggrieved by an order of the Superior Court concerning release, may petition the Appellate Court for review of such order. Any such petition shall have precedence over any other matter before said Appellate Court and any hearing shall be heard expeditiously with reasonable notice."

See *State* v. *Fernando A.*, 294 Conn. 1, 5 n.3, 981 A.2d 427 (2009) ("a defendant's exclusive nondiscretionary remedy from an order concerning conditions of release is a petition to the Appellate Court pursuant to . . . § 54-63g"); *State* v. *Dellacamera*, 110 Conn. App. 653, 657, 955 A.2d 613 (2008) ("[f]or persons aggrieved by orders concerning release in criminal cases, the General Assembly has provided the exclusive remedy of the petition for review").

Here, the defendant challenged the court's denial of his motion for a bond pending appeal by filing an appeal from that judgment with this court. Because the proper method for challenging an order relating to bail is by filing a petition for review pursuant to § 54-63g, we dismiss this aspect of the defendant's appeal.

The portion of the appeal related to the trial court's denial of the defendant's motion for a bond pending appeal is dismissed. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.